**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

CHADA MANTOOTH,
GALE RAFFAELE,
ALEXIS NAGLE, and
NICOLE BUJOK, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

BAVARIA INN RESTAURANT INC D/B/A SHOTGUN WILLIE'S, and
DEBRA MATTHEWS,

      Defendants.

---

## COMPLAINT & JURY DEMAND

---

Plaintiffs Chada Mantooth, Gale Raffaele, Alexis Nagle, and Nicole Bujok, individually and on behalf of all others similarly situated, by and through their attorneys, Mari Newman, Darold W. Killmer, and Andy McNulty, of KILLMER, LANE & NEWMAN, LLP, respectfully allege for their *Complaint & Jury Demand* as follows:

### I. INTRODUCTION

1.      This is yet another case about the exploitation of one of the most vulnerable groups of employees: young women working as dancers in adult entertainment establishments. Despite court rulings across the country that have definitively found that dancers in adult entertainment establishments are entitled to the protections afforded by the Fair Labor Standards Act and state minimum wage and overtime laws, these establishments, including the Defendants in this case, continue to flout the law and violate the legal rights of women simply trying to make a living.

1

2.     Defendants Bavaria Inn Restaurant Inc. d/b/a Shotgun Willie's ("Shotgun Willie's") and its owner, Debra Matthews ("Matthews"), have and continue to unjustly and illegally enrich themselves at dancers' expense, denying Plaintiffs and other Class members their earned minimum wages, overtime pay, and the full retention of their tips, charging the Plaintiffs and similarly situated dancers fees to work, and subjecting them to unlawful fees and fines and other kickbacks.

3.     Defendants' actions in denying Plaintiffs and other Class members a minimum wage, overtime pay, and the full retention of their earned tips, and requiring Plaintiffs and other Class members to pay various fees and fines and other illegal kickbacks in order to work, have significantly decreased the incomes of these vulnerable workers while unjustly and illegally enriching Defendants.

## JURISDICTION AND VENUE

4.     This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), the Colorado Wage Claim Act (the "CWCA"), Colo. Rev. Stat. § 8-4-101, *et seq.*, and Colorado common law. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5.     This court has supplemental jurisdiction over any and all state law claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in the District of Colorado and a substantial part of the events at issue in this lawsuit took place in the District of Colorado.

## III. PARTIES

7.     Plaintiff Chada Mantooth is citizen of the United States and was at all times relevant hereto a resident of and domiciled in the State of Colorado.  Plaintiff Mantooth was, at relevant times, working as a dancer at Shotgun Willie's in Denver, Colorado.

8.     Plaintiff Gale Raffaele is citizen of the United States and was at all times relevant hereto a resident of and domiciled in the State of Colorado.  Plaintiff Raffaele was, at relevant times, working as a dancer at Shotgun Willie's in Denver, Colorado.

9.     Plaintiff Alexis Nagle is citizen of the United States and was at all times relevant hereto a resident of and domiciled in the State of Colorado.  Plaintiff Nagle was, at relevant times, working as a dancer at Shotgun Willie's in Denver, Colorado.

10.     Plaintiff Nicole Bujok is citizen of the United States and was at all times relevant hereto a resident of and domiciled in the State of Colorado.  Plaintiff Bujok was, at relevant times, working as a dancer at Shotgun Willie's in Denver, Colorado.

11.     The Collective/Class that Plaintiffs seek to represent is composed of women who worked as dancers for Defendants and who Defendants intentionally and unlawfully misclassified as independent contractors, failed to pay a minimum wage and overtime payments, charged various fees and fines, tip-shares and other unlawful kickbacks, and whose legal rights Defendants otherwise violated as set forth herein. They are referred to herein as "Plaintiff Dancers," "dancers" or "Class[1] members."

---

[1] As used herein, the term "Class Members" refers to members of the FLSA Collective Action and CWCA Class action.

7.      Defendant Bavaria Inn Restaurant Inc. d/b/a Shotgun Willie's ("Shotgun Willie's") is a Colorado corporation with a principal place of business in Glendale, Colorado, that owns and operates an adult entertainment establishment located in Glendale, Colorado.

8.      Defendant Debra Matthews owns and operates Shotgun Willie's and is involved in its employment decisions and daily operations.  Specifically, Defendant Matthews (1) exercised control over the terms and conditions of Plaintiff Dancers' employment; (2) supervised, directly and indirectly, the work performed by Plaintiff Dancers; (3) directly and indirectly exercised the right to hire, fire, or modify Plaintiff Dancers' employment conditions; (4) determined Plaintiff Dancers' classification as independent contractors and method of compensation; and (5) decided not to pay Plaintiff Dancers any amount as wages. Defendant Matthews is a resident of and domiciled in the state of Colorado.

9.      At all times pertinent to this Complaint, Defendants were an enterprise engaged in interstate commerce or in the production of goods for consumers as defined § 3(r) and 3(s) of the FLSA, 29 U.S.C. §§ 203(r) and 203(s). The annual gross sales volume of the Defendants was in excess of $500,000 per annum.

## FACTUAL ALLEGATIONS[2]

***Defendants have, and continue to, exploit their vulnerable workers.***

10.      Defendant Shotgun Willie's in Glendale, Colorado is an adult entertainment establishment owned and operated by Defendant Matthews, that caters to male clientele by providing entertainment by female dancers, including Plaintiffs and other Class members, in various stages of undress.

---

[2] While the allegations in this Complaint and Jury Demand are generally written in the past tense, they apply equally to Class members who are currently employed by Defendants.

11.     Defendants' business model is predicated entirely on the exploitation of Plaintiffs and other Class members in order for its owners to earn a profit.

12.     In order to maximize their own profits at the expense of Plaintiff and other Class members, Defendants improperly classified Plaintiffs and other Class members as independent contractors, failed to pay a minimum wage or overtime pay, regularly denied them and other members of the Class the full wages and tips they had earned, required them to pay various fees and fines in order to be allowed to work, and otherwise violated their legal rights as set forth herein.

13.     Although Plaintiffs and other Class members were employed by Defendants, Defendants paid them **no money** for the work they performed.

14.     Instead of paying Plaintiffs and other Class members for their work, Defendants actually required that Plaintiffs and other Class members pay *Defendants* before they were allowed to work.

15.     The amounts that Defendants required Plaintiffs and other Class members to pay before being allowed to work depended on the time their shifts began. In order to work the more profitable late night shifts, Plaintiffs and other Class members were required to pay a larger fee to Defendants.

16.     Defendants required Plaintiffs and other Class members to pay "House Fees" of up to $100 in order to be allowed to work.

17.     In turn, Defendants used the money paid to them by Plaintiffs and other Class members in order to fund the operation of Shotgun Willie's.

18.     The only compensation received by Plaintiffs and other Class members was a portion of the gratuities or "tips" that they were given by customers.

19.     In addition to charging Plaintiffs and other Class members various fees before allowing them to work, Defendants required that Plaintiffs and other Class members give a portion of their earned tips to the security guards ("bouncers"), the disk jockeys ("DJs"), doorperson, dance counters, and valets.

20.     Defendants required Plaintiffs and other Class members to pay Defendants a fee of $5 for every personal (or private) dance provided to a customer. Defendants employed an individual who counted the number of private dances Plaintiffs and other Class members performed to ensure that the $5 fee was tallied and collected.

21.     Defendants likewise required that Plaintiffs and other Class members pay *additional* fees in order to dance in the "champagne" or "VIP" rooms, in that they were required to pay the club $25 for each hour they were not on the stage dance rotation. When Plaintiffs and other Class members danced for customers in the "champagne" or "VIP" rooms, Defendants required them to charge $25 per song played and to then pay $5 of that money to Defendants.

22.     Defendants arbitrarily fined Plaintiffs and other Class members for not dancing on stage during their shifts.

23.     If Plaintiffs were engaged in a private dance when it was their "turn" to dance on stage, Defendants charged Plaintiffs $25.

24.     The fees, fines, and tips that Defendants required Plaintiffs and other Class members to pay were unlawful "kickbacks."

25.     In addition to funding their operations through the fees demanded of Plaintiffs and other Class members, Defendants reaped the benefits of the substantial profits from door charges and drink sales without paying Plaintiffs and Class members a wage.

26.     Furthering their exploitation, Defendants also failed to pay Plaintiffs and other Class members overtime wages for weeks during which they worked in excess of forty hours.

***Plaintiffs and other Class members were, and continue to be, employees of Defendants, not independent contractors.***

27.     At all relevant times, Plaintiffs and other Class members are, and were, employees of Shotgun Willie's under the Fair Standards Labor Act ("FLSA") and Colorado Labor Code, and are, and were, entitled to a minimum wage, receipt of overtime pay, retention of all tips received, and all other benefits regularly conferred upon employees by statute.

28.     At all relevant times, Defendants have been the employers of Plaintiffs and other Class members.

29.     Defendant Debra Matthews, the owner and operator of Shotgun Willie's. Defendant Matthews was also an employer in that she is consistently present at the club and is a hand-on owner/manager. Defendant Matthews is responsible for determining the terms and conditions of Plaintiffs' and Class members' employment as described more fully herein. Defendant Matthews also makes the hiring and firing decisions regarding Plaintiffs and other Class members. She personally disciplines and fines Plaintiffs and other Class members for alleged transgressions, regulates their appearance, and regulates their conduct.

30.     Defendants intentionally and willfully misclassified Plaintiffs and other Class members as independent contractors in order to avoid paying them the minimum wage and/or overtime pay required under the FLSA and/or the Colorado Minimum Wage Act.

31.     Defendants improperly withheld portions of Plaintiffs and Class member's tips, and otherwise forced them to pay unlawful kickbacks.

32.     Defendants also intentionally withheld other statutory rights and benefits, harming Plaintiffs and other Class members and causing them significant injury and financial loss.

33.     Plaintiffs and other Class members received no wage payments from Defendants, but instead depended only on gratuities received from customers.

34.     In many instances, Defendants' practices resulted in Plaintiffs and other Class members earning less than minimum wage, in violation of federal and state law.

35.     Defendants exercised significant control over Plaintiffs and other Class members.

36.     Defendants controlled the amount that Plaintiffs and other Class members were allowed to charge for personal dances, setting the price at $25 per song, of which dancers were required to pay $5 to Defendants.

37.     Defendants controlled the amount that Plaintiffs and other Class members were allowed to charge for dances in the champagne or VIP rooms. Plaintiffs were only allowed to charge customers $25 per song and $5 of that money went directly to Defendants.

38.     Defendants required that Plaintiffs and other Class members work a minimum of two shifts per week. Plaintiffs and other Class members were required to work these shifts according to a set schedule imposed by Defendants. Each week, Plaintiffs and other Class members were required to request their shifts for the following week. These requests were then either approved or rejected by Defendants.

39.     Defendants controlled Plaintiffs' and other Class members' schedules. Specifically, Defendants did this by reserving the right to require Plaintiffs and other Class members to select the days they would be working a week in advance; setting a minimum number of sessions they must work that week; setting a minimum number of hours per

showtime; and charging a lesser fee if Plaintiffs and other Class members danced from 11 a.m. until 6 p.m. (the less lucrative shifts).

40.     Defendants fined Plaintiffs and other Class members when they were late for one of their scheduled shifts, charged them higher house fees, or sent them home.

41.     Defendants required Plaintiffs and other Class members to call Shotgun Willie's by a certain time if they wanted to reschedule an assigned shift. If Plaintiffs and other Class members did not call and inform Shotgun Willie's that they would not be attending a scheduled shift, they risked being fined, not being allowed to work their next shift, or terminated.

42.     Defendants required Plaintiffs and other Class members to seek manager approval prior to leaving the club. Defendants required that Plaintiffs and other Class members be escorted individually to their vehicles when leaving the club.

43.     Defendants required that Plaintiffs and other Class members check in and out with a manager at the beginning and ending of each shift. At the beginning of the shift, the manager would clock Plaintiffs and other Class members in. At the end of the shift, the manager would clock Plaintiffs and other Class members out.

44.     If Plaintiffs and other Class members did not pay the House Fees charged by Defendants, they were not allowed to work.

45.     Defendants often required that Plaintiffs and other Class members work extra weekday shifts prior to earning approval to work weekend shifts, which were more lucrative.

46.     Defendants restricted Plaintiffs' and other Class members' access to the premises of the nightclub. If Plaintiffs and other Class members were on the premises of any nightclub at any time when they were not scheduled to perform and they remained on the premise for more

than 20 minutes, they were deemed to be on shift. Defendants then forced some Plaintiffs and other Class members to pay the commensurate House Fee.

47.     Defendants required Plaintiffs and other Class members to wear particular types of dress, styles of makeup, and maintain a certain level of fitness and grooming, and otherwise regulated their physical appearance. For example, Defendants required that Plaintiffs and other Class members wear make-up and have their hair in a particular fashion. Defendants required Plaintiffs to wear certain styles of clothing; for example, Defendants required one Plaintiff to buy new, black shoes because pink shoes were not allowed. Defendants required Plaintiffs and other Class members to lose weight in order to continue their employment.

48.     Shotgun Willie's had theme nights, wherein Plaintiffs and other Class members were required to wear certain clothing and make-up. For example, Plaintiffs and other Class members were required to dress in themed clothing for "redneck" parties, "white" parties, Halloween, and Star Wars-themed clothing on May the Fourth.

49.     Defendants regulated Plaintiffs' and other Class members' workplace conduct through oral and written guidelines and policies.

50.     Defendants regulated Plaintiffs and other Class members by specifying the manner in which they danced, including types of movements that were allowed and those that were prohibited.

51.     Defendants regulated Plaintiffs and other Class members by specifying the manner in which they interacted with customers, specifying types of interaction and conduct that were allowed and others that were prohibited. For example, Defendants arbitrarily fined Plaintiffs and other Class members for deciding not to dance on stage. If Plaintiffs were engaged in a private dance when it was their "turn" to dance on stage, Defendants charged Plaintiffs $25.

52.     Defendants further regulated Plaintiffs and other Class members by requiring them to "tip out" the DJs, bouncers, doorperson, dance counters, and valets.

53.     Defendants set the amount that customers were required to pay for use of the VIP room.

54.     Defendants also required Plaintiffs and other Class members to pay a fee to work any given shift, in varying amounts depending on the time of evening.

55.     Defendants additionally regulated Plaintiffs and other Class members by punishing them for failing to have government issued identification on their person at all times while on the premises; failing to appear for showtimes on two or more occasions during any calendar month; filing to timely commence their showtimes on two or more occasions during any calendar week; failing to pay any house fee when due; or – most remarkably – claiming that their business relationship with Defendants was that of employee-employer.

56.     When Plaintiffs and other Class members began their shifts, the valet would take keys and identification for the night, would only give them back at the end of the night after Plaintiffs and other Class members had paid their house fees.

57.     Defendants would strictly control the amount of alcohol that Plaintiffs and other Class members consumed while working. Upon starting a shift, Plaintiffs and other Class members would receive two drink coupons. These drink coupons did not entitle Plaintiffs and other Class members to free drinks. Rather, Plaintiffs and other Class members were required to buy their own drinks, but could only purchase two per shift (in accordance with their drink tickets). In this manner, Defendants ensured that Plaintiffs and other Class members consumed only two drinks per shifts.

58.     Plaintiffs and other Class members did not have significant control over their opportunity for profit or loss.

59.     Defendants were responsible for attracting customers, advertising, and maintaining food and alcohol availability and pricing.

60.     The investment of Plaintiffs and other Class members was relatively minor compared to Defendants' considerable investment in operating a nightclub.

61.     Plaintiffs and other Class members established permanency at Shotgun Willie's.

62.     Plaintiffs and other Class members regularly worked at Shotgun Willie's over the course of years.

63.     Plaintiffs and other Class members did not exercise the skill required to elevate their status to independent contractors.

64.     Plaintiffs and other Class members were not selected as dancers based on prior dancing experience, skill, or propensity and received no material training or instruction while employed by Defendants.

65.     Plaintiffs and other Class members were an integral part of the success of the Defendants' business.

66.     Defendants' business model was dependent on Plaintiffs and other Class members.

67.     The totality of the circumstances surrounding Plaintiffs' and other Class members' employment relationship with Defendants indicates economic dependence.

### ***Plaintiffs and other Class members were tipped employees entitled to full retention of all gratuities.***

68.     Plaintiffs and other Class members were tipped employees who customarily and regularly received more than $200 a night in tips.

12

69.     Defendants improperly forced Plaintiffs and other Class members to share those tips with other employees.

70.     Defendants intentionally denied Plaintiffs and other Class members their due minimum wage as tipped employees.

71.     Plaintiffs and other Class members were therefore obligated to support themselves exclusively through the tips received from customers for performing exotic stage, table, lap, topless, nude and/or VIP room dances (hereinafter collectively referred to as "dance tips").

72.     The dance tips and customer payments for private room performances are tips, not wages or service charges.

73.     Defendants did not directly receive any monies from customers for the dances performed by Plaintiffs and other Class members. Instead, Defendants depended on Plaintiffs and other Class members to give them the monies received by them.

74.     Defendants treated the dance tips and the payments by customers for private room performances as tips by requiring Plaintiffs and other Class members to "tip-out" Defendants' DJs, bouncers, doorperson, dance counters, and valets by paying them significant portions of the dance tips and pay for private rooms earned by Plaintiffs and other Class members.

75.     These are unlawful "kickbacks" within the meaning of the FLSA.

76.     The monies given to Plaintiffs and other Class members by the customers for the dances performed were not entered into Defendants' gross receipts.

77.     Defendants did not issue to Plaintiffs and other Class members W-2 forms, 1099 forms, or any other wage-related documents indicating any amounts paid from their gross receipts.

78.     Employers may apply a tip credit to offset any minimum wage obligation owed to tipped employees only if the employer has informed the employee of the applicability of this provision in advance and the employee retains all tips received.

79.     An employer may require employees to pool their tips only when the pool consists of employees who customarily and regularly receive tips.

80.     Defendants never informed Plaintiffs and other Class members of the applicability of this provision in advance (instead telling them that it did not apply) and therefore were prohibited from applying a tip credit to offset Plaintiffs' and other Class members' minimum wage.

81.     DJs, bouncers, doorpersons, and dance counters are not employees who customarily and regularly receive tips. Defendants' DJs, bouncers, doorpersons, and dance counters received regular paychecks valued at or above the hourly minimum wage. Therefore, the DJs, bouncers, doorpersons, and dance counters invalidated any tip pool and Plaintiffs and other Class members were entitled to retain the entirety of the tips received from customers.

82.     Plaintiffs and other Class members were entitled to the full minimum wage due under the applicable federal and/or state law (including Colorado law) without any tip credit *and* to retain the full amount of any dance tips and pay for private room performances given to them by customers.

83.     Plaintiffs and other Class members have suffered financial loss, injury, and damage as a result of Defendants' failure to pay them minimum wages and/or overtime pay,

requiring them to pay stage and room fees, requiring them to pay a daily fee, and requiring them to share a percentage of their tips with the DJs, bouncers, doorperson, dance counters, and valets.

***Defendants intentionally and illegally mistreated Plaintiffs and other Class members and willfully violated the FLSA and the Colorado Labor Code.***

84.     All actions by Defendants described herein were willful, intentional, and not the result of negligence or good-faith but incorrect assumptions.

85.     At all relevant times, Defendants knew or recklessly disregarded that the FLSA and Colorado Labor Code applied to Plaintiffs and other Class members and, that under the economic reality test, Plaintiffs and other Class members were obviously employees, not independent contractors, entitled to a minimum wage.

86.     At all relevant times, Defendants knew or recklessly disregarded that Plaintiffs and other Class members were entitled to one and one half the minimum wage during weeks Plaintiffs and other Class members worked overtime.

87.     At all relevant times, Defendants knew or recklessly disregarded that Plaintiffs and other Class members were tipped employees.

88.     It is well-established (and was known or should have been known by Defendants) that exotic dancers are employees for purposes of the FLSA and state wage laws comparable to the Colorado Wage Claim Act, not independent contractors. *See Donovan v. Tavern Talent and Placement Inc.*, 1986 U.S. Dist. LEXIS 30955, at *6-*8 (D. Colo. Jan. 8, 1986); *Jeffcoat v. State, Dep't of Labor*, 732 P.2d 1073 (Alaska 1987); *Martin v. Priba Corp.*, 1992 U.S. Dist. LEXIS 20143, 1992 WL 486911, at *5 (N.D. Tex. 1992); *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324 (5th Cir. 1993) (finding dancers are employees under the FLSA); *Reich v. Priba Corp.*, 890 F. Supp. 586, 593 (N.D. Tex. 1993); *Harrell v. Diamond A Entm't, Inc.*, 992

F. Supp. 1343, 1346 (M.D. Fla. 1997); *303 W. 42nd St. Enterprises, Inc. v. I.R.S.*, 181 F.3d 272 (2d Cir. 1999); *Doe v. Cin-Lan, Inc.*, No. 08-cv-12719, 2008 U.S. Dist. LEXIS 107802, at *68, 2008 WL 4960170 (E.D. Mich. 2008); *Chaves v. King Arthur's Lounge*, No. 07-2505, 2009 WL 3188948 (Mass. Super. July 30, 2009); *Morse v. Mer Corp*., 2010 U.S. Dist. LEXIS 55636 (S.D. Ind. June 4, 2010); *Thompson v. Linda & A., Inc.*, 779 F. Supp. 2d 139, 154 (D.D.C. 2011); *Thornton v. Crazy Horse, Inc.*, No. 3:06-cv-251-TMB, 2012 U.S. Dist. LEXIS 82770, 2013 WL 2175753 (D. Alaska June 14, 2012); *Bosco v. Tampa Food & Beverage, LLC*, No. 8:11-cv-1651-T-26AEP, 2013 U.S. Dist. LEXIS 807, 2013 WL 49477, *1 (M.D. Fla. Jan. 3, 2013); *Milano's v. Kansas Dep't of Labor*, 296 Kan. 497 (Kan. 2013); *Butler v. PP & G, Inc.*, Civ. No. WMN-13-430, 2013 U.S. Dist. LEXIS 111262, 2013 WL 4026938, *5 (D. Md. Aug. 6, 2013) (collecting case holding that exotic dancers are employees for FLSA purposes); *Hart v. Rick's Cabaret Int'l, Inc.*, 09 CIV. 3043 PAE, 2013 WL 4822199 (S.D.N.Y. Sept. 10, 2013); *Collins v. Barney's Barn, Inc., et al.*, No. 4:12-CV-00685 SWW, 2013 U.S. Dist. LEXIS 184276 (E.D. Ark. Nov. 14, 2013); *Stevenson v. Great Am. Dream, Inc.*, No. 1:12-CV-3359-TWT, 2013 U.S. Dist. LEXIS 181551, 2013 WL 6880921, at *6 (N.D. Ga. Dec. 31, 2013); *McFeeley v. Jackson Street Entm't, LLC*, 47 F. Supp. 3d 260, 273 (D. Md. 2014); *Mason v. Fantasy, LLC*, Civil Action No. 13-cv-02020-RM-KLM, 2015 U.S. Dist. LEXIS 97640 (D. Colo. July 27, 2015).

89.     At all relevant times, Defendants knew or recklessly disregarded that the DJs, bouncers, doorpersons, and dance counters were not employees who customarily and regularly received tips and that they invalidated any tip pool.

90.     At all relevant times, Defendants knew or recklessly disregarded that the dance tips and room fees received by Plaintiffs and other Class members were Plaintiffs and other

Class members' sole property and that the dance tips and room fees were tips, not wages or service charges.

91.     Defendants viewed the dance tips and customers' room payments as tips by requiring Plaintiffs and other Class members to "tip-out" the DJs, bouncers, doorperson, dance counters, and valets using money earned by Plaintiffs and other Class members from dance tips and room payments.

92.     At all relevant times, Defendants knew or recklessly disregarded the requirement that they pay Plaintiffs' and other Class members' wages finally and unconditionally or "free and clear."

93.     Defendants also willfully failed to meet the wage requirements of the FLSA by requiring Plaintiffs and other Class members to pay "kickbacks" directly or indirectly to Defendants, or to another person for Defendants' benefit, including the whole or part of the wage delivered to Plaintiffs and other Class members.

94.     Defendants refused to issue Plaintiffs and other Class members any tax documentation regarding their wages and employment.

95.     Despite being aware of the FLSA's and the Colorado Labor Code's application to Plaintiffs and other Class members, Defendants intentionally and willfully chose to misclassify Plaintiffs and other Class members as independent contractors, to withhold minimum wages, to deny overtime pay, to require Plaintiffs and other Class members to share their tips with employees who do not customarily and regularly receive tips, to charge them improper fees and fines, and to otherwise violate their legal rights.

*__Collective/Class Allegations__*

96.     Plaintiffs bring this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b).

97.     All requirements of Fed. R. Civ. P. 23(a) and (b) are satisfied.

98.     All members of the Class are victims of a single decision, policy, and/or plan designed by Defendants to intentionally deny Plaintiffs and other Class members of minimum wages and overtime pay, to require Plaintiffs and other Class members to pay various fees to work, to require Plaintiffs and other Class members to share a percentage of their tips, to charge them various fees, and to otherwise violate their rights.

99.     The members of the Collective/Class to be certified against Defendants are defined as follows:

> All individuals, who at any time from the date three years prior to the date this Complaint was originally filed continuing through the present, worked as dancers at Shotgun Willie's in Glendale, Colorado, and were designated as independent contractors.

100.    The members of the Class are so numerous that joinder of all members is impracticable. Although the exact number of potential Class members is currently unknown, on information and belief, the number of dancers who have worked for Defendants during the relevant time period exceeds 100 women.

101.    There are questions of law and fact common to the Class including whether the Defendants violated the FLSA and the Colorado Wage laws by treating Plaintiffs and other Class members as independent contractors instead of employees, whether Plaintiffs and other Class members were denied minimum wages and/or overtime pay, whether the monies given to Plaintiffs and other Class members as dance tips and room fees are tips to which they are solely entitled, whether the DJs, bouncers, doorpersons, and dance counters are employees who

customarily and regularly receive tips, whether Defendants charged Plaintiffs and other Class members to work, whether Defendants intentionally denied Plaintiffs and other Class members the full retention of their tips, whether Defendants required Plaintiffs and other Class members to pay "kickbacks" in violation of the FLSA, and whether Defendants were unjustly enriched at the expense of Plaintiffs and other Class members.

102.     The claims of the named Plaintiffs are typical of the claims of the class because they were not paid a minimum wage or overtime pay, were required to pay in order to work, and were required to share their tips like all other Class members.

103.     The named Plaintiffs will fairly and adequately protect the interests of the Class. The named Plaintiffs, like all Class members, have suffered financial loss, injury, and damage as a result of Defendants' failure to pay them minimum wages and/or overtime pay, requiring them to pay fees in order to work, and requiring them to share a percentage of their tips with the DJs, bouncers, doorpersons, dance counters, and valets, and charging them various fines and/or kickbacks.

104.     The named Plaintiffs have no interest that would be adverse to the interests of the Class.

105.     The named Plaintiffs have retained counsel experienced in employment disputes and, particularly, claims against adult entertainment establishments under the FLSA and the Colorado Labor Code.

106.     This class action is maintainable under Fed. R. Civ. P. 23(b)(1). The prosecution of separate actions on behalf of individual class members would create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

107.     This class action is maintainable under Fed. R. Civ. P. 23(b)(3). The questions of law and fact are common to Plaintiffs and predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

108.     The named Plaintiffs are similarly situated to potential opt-in Plaintiffs under 29 U.S.C. § 216(b).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**VIOLATION OF THE FAIR LABOR STANDARDS ACT - 29 U.S.C. 201, *et. seq*.**
**Against Defendants Shotgun Willie's and Matthews**

109.     Plaintiffs hereby incorporate all paragraphs by reference all as if fully set forth herein.

110.     This claim arises from Defendants' willful violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq*., for failure to pay Plaintiffs and other Class members a minimum wage and overtime pay to which they were entitled, requiring that they share their tips with DJs, bouncers, doorpersons, dance counters, and valets, charging Plaintiffs and other Class members various fees to work, charging Plaintiffs and other Class members inappropriate fines, and other unlawful kickbacks.

111.     At all times relevant, Defendants have been, and continue to be, "employers" engaged in commerce, within the meaning of the FLSA 29 U.S.C. § 201, *et. seq*.

112.     At all times relevant, Defendants have employed and continued to employ employees, including Plaintiffs and other Class members, who engage or engaged in commerce.

113.     At all times relevant, upon information and belief, Defendants have had an annual gross volume of sales made or business done in excess of $500,000.00.

114. The minimum wage and overtime provisions of the FLSA, 29 U.S.C. § 201, *et. seq.*, apply to Defendants and protect Plaintiffs and other Class members.

115. The named Plaintiffs have consented in writing to be a part of this action, pursuant to 29 U.S.C. § 216(b). As this case proceeds, it is likely that other individuals will sign consent forms and join as Class Members.

116. Pursuant to the FLSA, 29 U.S.C. § 206, Plaintiffs and other members of the Class were entitled to be compensated at a rate of $7.25 per hour at all times relevant.

117. Pursuant to the FLSA, 29 U.S.C. § 207, Plaintiffs and other members of the Class were entitled to be compensated at one and one-half the minimum wages for hours they worked over forty hours a week.

118. Defendants was not allowed to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. § 201, *et. seq.*, because Defendants provided no notice to employees of their intention to take a tip credit (instead telling them that it did not apply because they were independent contractors) and because Plaintiffs and other Class members were not allowed to retain all of their tip money.

119. Defendants demanded that Plaintiffs and other Class members pay "kickbacks" in the form of fees and tip shares.

120. Defendants failed to pay Plaintiffs' and other Class members' unconditional wages, as Plaintiffs and other Class members were required to "kick back" fees and tips, directly or indirectly to Defendants or to others for Defendants' benefit.

121. Defendants, pursuant to their policies and practice, refused and failed to pay a minimum wage and/or overtime pay to Plaintiffs and other Class members.

122.     Defendants, pursuant to their policies and practices, charged Plaintiffs and other Class members various fees in order to work.

123.     By failing to compensate Plaintiffs and other Class members, Defendants violated, and continue to violate, Plaintiffs' and other Class members' statutory rights under FLSA, 29 U.S.C. § 201, *et seq.*

124.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255.

125.     The named Plaintiffs, on behalf of themselves and all members of the Class of Plaintiffs, seek damages in the amount of their respective unpaid wages, liquidated damages as provided under the FLSA, 29 U.S.C. § 216(b), repayment of fees, fines, tips, and other unlawful kickbacks, interest, and such other legal and equitable relief as the Court deems proper and as set forth herein.

126.     The named Plaintiffs, on behalf of themselves and all members of the Class of Plaintiffs, seek recovery of attorneys' fees and cost to be paid by Defendants as provided by the FLSA, 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF THE COLORADO WAGE CLAIM ACT –**
**C.R.S. § 8-4-101, *et seq.***
**Against Defendant Shotgun Willie's**

127.     Plaintiffs hereby incorporate all paragraphs by reference as if fully set forth herein.

128.     This claim arises from Defendants' willful violation of the Colorado Wage Claim Act ("CWCA"), C.R.S. § 8-4-101 *et seq.*, in that Defendants willfully failed to pay Plaintiffs and Class members a minimum wage or overtime, required improper tip sharing, and otherwise violated their rights under this statute.

129.    Defendants violated the Colorado Minimum Wage Act ("CMWA"), C.R.S. § 8-6-101 *et seq.*, as implemented by Colorado Minimum Wage Order ("MWO") Numbers 30. 31, 32, and 33 by failing to pay a minimum wage and overtime pay to Plaintiff and other Class members to which they were entitled. 7 C.C.R. 1103-1.

130.    At all times relevant, Defendants has been and continues to be an "employer" within the meaning of the CWCA, CMWA and MWO. 7 C.C.R. 1103-1(2).

131.    At all times relevant, Defendants have employed and continues to employ employees, including Plaintiffs and other Class members.

132.    The minimum wage and overtime provisions of the CWCA, CMWA and CMO apply to Defendants and protect Plaintiffs and other Class members. 7 C.C.R. 1103-1(4). Plaintiffs and other Class members are employees within the meaning of the CWCA, CMWA and MWO. 7 C.C.R. 1103-1(2).

133.    Pursuant to the CMWA, Plaintiffs and other Class members were entitled to be compensated at a rate of $8.00 per hour from January 1, 2014 to December 31, 2014, $8.23 per hour from January 1, 2015 to December 31, 2015, $8.31 per hour from January 1, 2016 to December 31, 2016, and $9.30 per hour from January 1, 2017 to the present.

134.    Pursuant to the CWCA and CMWA, if this Court determines that Plaintiffs and other Class members are tipped employees, Plaintiffs and other Class members were entitled to be compensated at a rate of $4.98 per hour from January 1, 2014 to December 31, 2014, $5.21 per hour from January 1, 2015 to December 31, 2015, $5.29 per hour from January 1, 2016 to December 31, 2016, and $6.28 per hour from January 1, 2017 to the present. If Plaintiffs and other Class members tips combined with the wage owed during each aforementioned year did

equal the minimum hourly wage for non-tipped employees, as detailed in ¶ 136, Defendants were required to pay Plaintiffs and other Class members cash wages to cover the difference.

135.    Pursuant to the CWCA and CMWA, Plaintiffs and other members of the Class were entitled to be compensated at one and one-half the minimum wages for hours they worked over forty hours per week.

136.    Defendants provided no notice to the employees of their intention to take a tip credit (instead telling them that it did not apply because they were independent contractors), and Plaintiffs and other Class members were not allowed to keep all of their tip money.

137.    Defendants, pursuant to its policies and practices, refused and failed to pay a minimum wage and/or overtime payments to Plaintiffs and other Class members.

138.    Defendants, pursuant to their policies and practices, charged Plaintiffs and other Class members various fees in order to work.

139.    By failing to compensate Plaintiffs and other Class members, Defendants violated, and continue to violate, Plaintiffs' and other Class members' statutory rights under the Colorado Wage Claim Act, including but not limited to the Colorado Minimum Wage Act.

140.    The foregoing conduct, as alleged, constitutes a willful violation of the CWCA and CMWA. C.R.S. § 8-4-122.

141.    The named Plaintiffs, on behalf of themselves and the Class, seek damages in the amount of their respective unpaid wages, interest, and such other legal and equitable relief as the Court deems proper and as set forth herein.

142.    The named Plaintiffs, on behalf of themselves and the Class, seeks recovery of attorneys' fees and costs to be paid by Defendants as provided by the CWCA, CMWA and CMO. C.R.S. § 8-6-118; 7 C.C.R. 1103-1(18).

## THIRD CLAIM FOR RELIEF
### UNJUST ENRICHMENT
#### Against Defendants Shotgun Willie's and Matthews

143.    Plaintiffs hereby incorporate all paragraphs by reference as if fully set forth

herein.

144.    By refusing to pay Plaintiffs and other Class members wages for hours worked,

including overtime pay, requiring Plaintiffs and other Class members to share their tips,

charging Plaintiffs and other Class members fees to work, and charging them improper fines,

Defendants were unjustly enriched at the expense of and to the detriment of Plaintiffs and other

Class members.

145.    Defendants' retention of any benefit collected directly and indirectly violated

principles of justice, equity, and good conscience when they refused to pay Plaintiffs' and other

Class members' wages, required Plaintiffs and other Class members to share tips, and charged

Plaintiffs and other Class members unreasonable fees and/or fines. As a result, Defendants have

been unjustly enriched.

146.    Plaintiffs and other Class members are entitled to recover from Defendants all

amounts that Defendants have wrongfully and improperly obtained, and Defendants should be

required to disgorge to Plaintiffs and other Class members the benefit they have unjustly

obtained.

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated,

respectfully request that this Court enter judgment in their favor and against Defendants, and

award them all relief allowed by law, including but not limited to the following:

a.    Issuance of notice pursuant to 29 U.S.C. § 216(b) as soon as possible to all
     dancers who worked for Defendants during any portion of the three years
     immediately preceding the filing of this action. Generally, this notice should
     inform them that this action has been filed, describe the nature of the action, and

explain their right to opt into this lawsuit without fear of reprisal, retaliation, or abuse by Defendants;

b.  Judgment against Defendants for an amount equal to Plaintiffs' and other Class members unpaid back wages, overtime pay, fees, shared tips, fines, and all other unlawful kickbacks;

c.  Judgment against Defendants that its violations of the FLSA and the Colorado Wage Claim Act were willful;

d.  Liquidated Damages in amount equal to Plaintiffs' and other Class members' damages pursuant to 29 U.S.C. § 216(b).

e.  All damages, penalties and other relief allowable under state law;

f.  Declaratory relief and other appropriate equitable relief, including injunctive relief;

g.  Pre-judgment and post-judgment interest at the highest lawful rate;

h.  Attorneys' fees and costs as allowed by law;

i.  Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

j.  Such further relief as justice requires.

**PLAINTIFFS HEREBY DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 9th day of May 2017.

KILLMER, LANE & NEWMAN, LLP

*s/ Mari Newman*
_____
Mari Newman
Darold W. Killmer
Andy McNulty
1543 Champa St., Ste. 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001 fax
mnewman@kln-law.com
dkillmer@kln-law.com
amcnulty@kln-law.com

*Attorneys for Plaintiffs*