**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 17-cv-1150-WJM-MEH

CHADA MANTOOTH,
GALE RAFFAELE,
ALEXIS NAGLE, and
NICOLE BUJOK, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BAVARIA INN RESTAURANT, INC., d/b/a Shotgun Willie's, and
DEBRA MATTHEWS,

Defendants.

---

## ORDER GRANTING IN PART DEFENDANTS' RENEWED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS OR STAY PROCEEDINGS

---

Plaintiffs Chada Mantooth, Gale Raffaele, Alexis Nagle, and Nicole Bujok ("Plaintiffs") allege that Defendants Bavaria Inn Restaurant Inc. d/b/a Shotgun Willie's ("Shotgun Willie's") and its owner Debra Matthews ("Matthews") (jointly, "Defendants") improperly classified Plaintiffs as independent contractors and violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the Colorado Wage Claim Act, Colo. Rev. Stat. §§ 8-4-101 *et seq.* ("CWCA"), and Colorado common law. (ECF. No. 1.) Currently before the Court are four motions, including Defendants' Renewed Motion to Compel Individual Arbitration and Dismiss or Stay Proceedings ("Motion to Compel"). (ECF No. 57.) Defendants argue that the terms of contracts between Plaintiffs and Shotgun Willie's and the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, require Plaintiffs to bring their claims in individual arbitration proceedings.

For the reasons explained below, the Court grants in part Defendants' Motion to Compel. The Court finds that Plaintiffs' claims must be submitted to individual arbitration, although certain provisions of the arbitration clause must in the interest of justice be severed. Because this dispute must be submitted to arbitration, the Court denies the other pending motions, ECF Nos. 43, 44, and 83, as moot. However, with respect to ECF No. 43, Plaintiffs' Expedited Motion to Proceed as a Conditional Collective Action, Provide Notice, and Toll All Statutes of Limitations, dismissal is without prejudice to the refiling of the motion if there is a legal basis to do so after the disposition of the arbitration.

## I. BACKGROUND

Plaintiffs are four individuals who, on behalf of themselves and those similarly situated, sued Defendants for violations of the FLSA, the CWCA, and Colorado common law. (ECF No. 1.) In their Complaint, Plaintiffs allege that Defendants—an adult entertainment club and its owner—improperly classified them as independent contractors rather than employees. Specifically, Plaintiffs allege that, because they were actually employees and not independent contractors, Defendants violated the FLSA and CWCA by failing to pay a proper minimum wage or overtime, requiring that Plaintiffs share tips, charging fees for Plaintiffs to work at Shotgun Willie's, and charging Plaintiffs "inappropriate fines." (ECF No. 1 ¶¶ 110, 116–120, 128, 133–138.)

Though not alleged in the Complaint, both parties acknowledge in their briefing that Plaintiffs signed "Entertainment License Agreements" ("Agreements"). (ECF Nos. 57 & 86.) These Agreements disclaim any employer-employee relationship and classify Plaintiffs as licensees. (ECF No. 57-2 ¶ 13.C.)

2

The Agreements also contain an arbitration provision ("arbitration clause"), written in bold and all capital letters, that commits the parties to arbitrate "any controversy, dispute, or claim . . . arising out of this agreement." (*Id.* ¶ 22.)[1] The parties also delegate exclusive authority regarding arbitrability to an arbitrator: "The arbitrator shall have exclusive authority to resolve any disputes over the validity and/or enforceability of any part of this agreement, including this paragraph 22 to arbitrate any and all claims." ("delegation clause") (*Id.* ¶ 22.A.)

The parties also agreed to certain terms related to the arbitrator and costs of the arbitration. The arbitration "shall be administered by a neutral arbitrator agreed upon by the parties." (*Id.* ¶ 22.A.) The only other condition for selecting the arbitrator is that either party may "request an arbitrator experienced in the adult entertainment industry." (*Id.* ¶ 22.A.) The arbitration clause also contains four provisions concerning the cost and fees arising out of the arbitration:

- "The costs of the arbitration shall be borne equally by the entertainer and the club unless the arbitrator concludes that a different allocation is required by law." (*Id.* ¶ 22.A.)

- "In the event that any party challenges, or is required to initiate proceedings to enforce, the arbitration requirements of this paragraph 22, the prevailing party to such challenges and/or enforcement proceedings shall be entitle to an award of all costs, including actual and reasonable attorney fees, incurred in litigation such issues." (*Id.* ¶ 22.D.)

- "Any ruling arising out of a claim between the parties shall, to the extent not precluded by applicable law, award costs incurred for the proceedings and reasonable attorney fees to the prevailing party." (*Id.* ¶ 22.E.)

---

[1] The arbitration provisions in the operative versions of the Agreements are identical. (ECF Nos. 57-2, 57-4, 57-8, 57-10.)

• The arbitrator "shall be permitted to award, subject only to the restrictions contained in this paragraph 22, any relief available in a court." (*Id.* ¶ A.)

Less than two months after Plaintiffs filed their Complaint (ECF No. 1), in late June 2017, Defendants moved to compel arbitration. (ECF No. 23.) Before this Court ruled on the motion, the parties agreed to limited discovery regarding the formation of the Agreements. (ECF No. 34.) The Court granted an unopposed request to defer briefing and consideration of the initial motion to compel and denied that motion without prejudice, subject to later re-filing. (ECF No. 38.) In October 2017, Defendants renewed their motion to compel (ECF No. 57), and it is that motion which is now before the Court.

## II. LEGAL STANDARD

Pursuant to § 2 of the Federal Arbitration Act ("FAA"), a written agreement to submit a controversy to arbitration "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Congress enacted the FAA to statutorily enshrine a "liberal federal policy favoring arbitration" in response to judicial hostility to arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also Hall Street Assocs. LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). An arbitration agreement stands on equal footing with other contracts and a court is required to enforce such an agreement according to its terms. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010). Such an agreement is generally enforced as written, "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Grounds for invalidation of an arbitration agreement include contract defenses, such as fraud, duress, or unconscionability. *Rent-A-Center*, 561 U.S. at 68.

The Court looks to Colorado contract law to determine whether an arbitration agreement is enforceable. *THI of New Mexico at Hobbs Center, LLC v. Patton*, 741 F.3d 1162, 1167 (10th Cir. 2014) (stating that an arbitration can be voided on state law grounds for revoking a contract). Colorado courts consider the following to decide whether a contract or provisions thereof are unconscionable:

> (1) the use of a standardized agreement executed by parties of unequal bargaining power; (2) the lack of an opportunity for the customer to read or become familiar with the document before signing it; (3) the use of fine print in the portion of the contract containing the provision in question; (4) the absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) the terms of the contract, including substantive fairness; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7) the circumstances surrounding the formation of the contract, including setting, purpose, and effect.

*Bernal v. Burnett*, 793 F. Supp. 2d 1280, 1286 (D. Colo. 2011) (citing *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986)). The *Davis* factors, so named for the Colorado Supreme Court case which set forth the relevant factors to be considered on this issue, require both procedural and substantive unconscionability for a contract to be unenforceable. *Vernon v. Qwest Commc'ns. Int'l, Inc.*, 857 F. Supp. 2d 1135, 1157 (D. Colo. 2012).

Challenges to an arbitration agreement must specifically contest the formation of the arbitration clause; a challenge to the contract as a whole is not sufficient. *Rent-A-Center*, 561 U.S. at 72 ("[U]nless [plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the

arbitrator."); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). If the party opposing arbitration does not specifically challenge the validity of the arbitration provision and the contract contains a savings clause, the agreement to arbitrate may be severed from the remainder of an otherwise-unenforceable contract. *Rent-A-Center*, 561 U.S. at 70–71; *see Santich v. VCG Holding Corp.*, 2017 WL 4251944 (D. Colo. Sept. 26, 2017). "[D]oubts are to be resolved in favor of arbitrability." *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1514 (10th Cir. 1995).

An arbitration agreement may delegate issues of arbitrability to an arbitrator. *Rent-A-Center*, 561 U.S. at 68–69 ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). A so-called "delegation clause" is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce," and is generally enforced as any other arbitration agreement under the FAA. *Id.* at 70. As with challenges to an arbitration clause, a party resisting delegation of arbitrability must specifically direct arguments at the delegation clause; otherwise the argument is for the arbitrator to resolve. *See id.* at 72. However, rather than resolving all doubts in favor of arbitrability, a court "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) (internal citations omitted). The "clear and unmistakable" standard applies to the parties' intent to arbitrate, not the validity of the agreement. *See Rent-A-Center*, 561 U.S. at 69 n.1.

In addition to considering contract defenses, a court must also evaluate whether arbitration will allow for effective vindication of a party's claims. *Nesbitt v. FCHN, Inc.*, 811 F.3d 371, 376–77 (10th Cir. 2016)*; Sanchez v. Nitro-Lift Techs, L.L.C.*, 762 F.3d 1139, 1149 (10th Cir. 2014). If the terms of the arbitration clause would prevent a party's effective vindication of its claims, a court may strike the portion which prevents effective vindication and compel arbitration on the remaining terms. *Pollard v. ETS PC, Inc.*, 186 F. Supp. 3d 1166, 1176–78 (D. Colo. 2016). If the party resisting arbitration argues that the cost of arbitration would prevent effective vindication, that party has the burden to show that arbitration would be "prohibitively expensive." *Sanchez*, 762 F.3d at 1149.

## III. ANALYSIS

The Court will first consider *who* has the power to decide whether the dispute is arbitrable. *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017) ("[T]he question of *who* should decide arbitrability precedes the question of *whether* a dispute is arbitrable.") (emphasis in original). Based on the plain language of the Agreements, the parties clearly and unmistakably intended to delegate arbitrability to the arbitrator. *See Rent-A-Center*, 561 U.S. at 69 n.1; *Santich*, 2017 WL 4251944, at *4. Despite Plaintiffs' arguments that the Agreements are unconscionable, as will be discussed in greater detail below, the Court finds that Plaintiffs do not specifically attack the delegation clause, and therefore, it is the arbitrator who must resolve any challenge to the enforceability of the Agreements. *See Rent-A-Center*, 561 U.S. at 72. However, the Court also finds that several provisions of the arbitration and delegation clauses

prevent Plaintiffs' effective vindication of their statutory rights in arbitration.  Because the Agreements contain a severability clause, the Court finds that the invalid portions are severable from the arbitration clause.

Accordingly, for the reasons explained below, the Court  strikes from the arbitration clause the fee-shifting provisions, the cost-sharing requirement for certain Plaintiffs, and the industry expert arbitrator selection requirement.  Subject to the severance of these provisions, all disputes regarding the validity of the contracts, unconscionability, and the class action waiver are properly delegated to the arbitrator to decide the arbitrability of the claim.  Finally, the Court also finds that nonsignatory Defendant Matthews may compel arbitration.

**A.     Arbitrability**

Before deciding any issues of the arbitrability of the dispute, the Court must first consider *who* should decide questions of arbitrability.  *Belnap*, 844 F.3d at 1281 ("The question of who should decide arbitrability precedes the question of whether a dispute is arbitrable.").  The Court first considers whether the parties evinced a clear and unmistakable intent to delegate validity disputes to the arbitrator.  *First Options of Chicago*, 514 U.S. at 944.  The Court then considers the challenges to the Agreements raised by Plaintiffs.  *Santich*, 2017 WL 4251944, at *4.

1.     <u>Clear and Unmistakable Intent to Arbitrate</u>

The parties clearly and unmistakably intended to delegate questions of arbitrability to an arbitrator.  The parties do not dispute that the Plaintiffs signed the Agreements or that the Agreements contained an arbitration and delegation clause.

The delegation clause states that "[t]he arbitrator shall have exclusive authority to resolve any disputes over the validity and/or enforceability of any part of this agreement, including this paragraph 22 to arbitrate any and all claims." (ECF No. 57-2 ¶ 22.A.) Plaintiffs do not argue that the text of the delegation provision is in someway ambiguous or unclear. Absent any argument from the parties or evidence to the contrary, the Court holds that the delegation clause is a "clear and unmistakable" delegation of arbitrability to the arbitrator. *See Rent-A-Center*, 561 U.S. at 69 n.1; *Santich*, 2017 WL 4251944, at *4. Thus, the Court will enforce the arbitration agreement as written unless, as discussed below, the FAA permits the Court to do otherwise.

### 2.   Unconscionability Arguments

Consistent with the dictates of the FAA, courts normally enforce arbitration agreements as written, unless there are grounds "at law or in equity for revocation of any contract." 9 U.S.C. § 2. Here, Plaintiffs contend that the Agreements, as well as the arbitration and delegation clauses therein, are unconscionable and so they should not be compelled to arbitrate their claims.

Plaintiffs mount multiple attacks on the procedural unconscionability of the Agreements. Specifically, Plaintiffs criticize: (1) the way in which Defendants presented the Agreements to Plaintiffs directly after auditions while Plaintiffs were in a state of undress; (2) formation of contracts while Defendants likely knew that Plaintiffs were under the influence of drugs or alcohol; (3) the "take it or leave it" nature of the Agreements; and (4) Plaintiffs' limited opportunities to read, review, or ask questions about the Agreements. (ECF No. 86 at 6–10.) While the Court has serious concerns

about the circumstances under which the Agreements were signed, each of Plaintiffs' challenges are directed to the contract as a whole, rather than the arbitration and delegation provisions.  *See Rent-A-Center*, 561 U.S. at 71–72 (holding that a party may challenge the validity of an agreement to arbitrate, but that challenges must be directed specifically to the agreement to arbitrate, not the agreement as a whole); *Prima Paint*, 388 U.S. at 404.  However, absent a challenge to the procedural unconscionability of the delegation or arbitration clauses, this Court cannot ignore the plain language of the contract.  *See Davis*, 712 P.2d at 991 ("In order to support a finding of unconscionability, there must be evidence of some overreaching on the part of one of the parties . . . together with contract terms which are unreasonably favorable to that party."); *Vernon*, 857 F. Supp. 2d at 1157 ("both procedural and substantive unconscionability are required for a contract to be unenforceable").

To the extent that the Plaintiffs specifically challenge the agreement to arbitrate (as opposed to the agreement as a whole), they have failed to tailor their arguments to the delegation clause, rather than the arbitration clause as a whole.  *See Rent-A-Center*, 561 U.S. at 72-73.  For example, Plaintiffs argue that, even if they were aware of the arbitration clause, they would have been unable to understand the arbitration provision because they (a) had only a high school diploma; (b) were teenagers when they first began working in similar establishments; (c) suffered anxiety; (d) were strapped for cash; and generally (e) "didn't know what they're doing."  (ECF No. 86 at 8–9.)  These criticisms address only the arbitration clause, not the delegation clause, which is separate and distinct.  *See Rent-A-Center* , 561 U.S. at 70–73; *Getzelman v. Trustwave Holdings, Inc.*, 2014 WL 3809736 (D. Colo. Aug. 1, 2014).

Moreover, Plaintiffs have failed to show that the arbitration clause alone is procedurally unconscionable. See *Davis*, 712 P.2d at 991 (outlining factors of procedural unconscionability). For example, Plaintiffs criticize the entire arbitration clause (but not specifically the delegation clause) as commercially unreasonable because Plaintiffs did not recall other contracts containing such a clause and the managers failed to mention the arbitration clause. However, courts in this District have held that "there is nothing inherently unfair about an agreement to arbitrate," *Bernal*, 793 F. Supp. 2d at 1288, and many employment agreements contain arbitration provisions, *see, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122–23 (2001) (holding that the FAA allows arbitration clauses in employment agreements and recognizing the potential benefits of arbitration of employment disputes). Indeed, contracts between strip clubs and exotic dancers frequently include arbitration requirements. *See Santich*, 2017 WL 4251944, at *1; *Wilson v. 59th St. LD Okla. City, LLC*, 2017 WL 722060, at *2 (W.D. Okla. Feb. 23, 2017); *McGrew v. VCG Holding Corp.*, 244 F. Supp. 3d 580, 584 (W.D. Ky. 2017); *Evering v. Tampa Food & Hospitality, Inc.*, 2016 WL 8943314, at *1 (M.D. Fla. Aug. 4, 2016).

While the Plaintiffs make strong arguments regarding the procedural unconscionability of the Agreements, most challenges are directed to the contract as a whole, rather than the arbitration and delegation provisions. Those arguments directed at the arbitration provision do not specifically address the delegation clause, nor do they establish procedural unconscionability with respect to the agreement to arbitrate. Colorado law requires both procedural and substantive unconscionability to invalidate a contract. Because Plaintiffs have failed to show any procedural unconscionability in the

formation of the delegation clause, this Court need not consider Plaintiffs' substantive unconscionability arguments.[2]

Consistent with Supreme Court precedent and the terms of the Agreements, this Court must compel the parties to arbitration. The arbitrator has sole authority to determine arbitrability and resolve the parties' dispute. One of the first considerations for the arbitrator, assuming Plaintiffs demand arbitration, will be to examine Plaintiffs' unconscionability arguments as they relate to the Agreements as a whole and determine if there exist valid contracts between the parties.

**B.    Effective Vindication of Rights Under Arbitration Clause**

In addition to any contract defenses, the Court must consider whether arbitration under the terms of the Agreements will thwart Plaintiffs ability to effectively vindicate their rights. *Nesbitt*, 811 F.3d at 378 (stating that precedent suggested that the effective vindication exception "stands apart from the issue of whether the parties voluntarily agreed to submit their claims to arbitration"). Under the effective vindication doctrine, a court will not enforce an arbitration agreement that "operates as a prospective waiver of a party's right to pursue statutory remedies." *Santich*, 2017 WL 4251944, at * 8.

Though under the guise of unconscionability, Plaintiffs raise several arguments that particular provisions of the arbitration clause will prevent effective vindication of

---

[2] The Court notes Plaintiffs' arguments regarding the substantive unconscionability of the grievance procedure. However, the grievance procedure has nothing to do with the enforceability of the delegation provision in the Agreements, and Plaintiffs possible failure to satisfy a condition precedent does not implicate whether this dispute must proceed in arbitration or litigation.

their statutory claims.  Specifically, Plaintiffs argue that the fee sharing and cost-shifting provisions are unfair because Plaintiffs have limited means and are unable to afford the cost of arbitration or the risks of an adverse outcome.  The fee-shifting and cost-sharing provisions somewhat conflict in that they require the costs to be shared equally (unless a different allocation is required by law) and that a rule "shall, to the extent not precluded by applicable law, award costs . . . and reasonable attorney fees to the prevailing party." (ECF No. 57-2 ¶ 22.A and E.)

The Court need not resolve this conflict, but will separately evaluate the provisions to determine their independent impact on Plaintiffs' ability to effectively pursue their claims in arbitration.  Plaintiffs also raise a concern about a provision that allows either party to request an arbitrator with experience in the adult entertainment industry.  The Court will consider Plaintiffs' concerns about each clause in turn.

1.  Fee Shifting

Plaintiffs argue that the fee-shifting provision prevents effective vindication of their statutory rights under the FLSA.  (ECF No. 86 at 11.)  Under the FLSA, a prevailing plaintiff may recover prevailing party attorneys' fees and costs.  29 U.S.C. § 216(b).  One fee-shifting clause in the arbitration agreement states that the prevailing party on a challenge to the arbitration requirements "shall be entitled" to fees and costs. (ECF 57-2 ¶ 22.D.)  The other fee-shifting clause requires the arbitrator to award fees and costs to the prevailing party "to the extent not precluded by applicable law."  (*Id.* ¶ 22.E.)  The arbitration clause also states that the arbitrator "shall be permitted to award . . . any relief available in a court."  (*Id.* ¶ 22.A.)  Plaintiffs argue that the FLSA creates a statutory entitlement for a prevailing plaintiff to recover fees and costs, but does not

*preclude* a defendant from receiving the same.  (ECF No. 86 at 11 n.6.)

Federal courts, including this Court, have found that arbitration clauses that hold a plaintiff liable for a prevailing defendant's fees and costs would thwart effective vindication of statutory rights under the FLSA.  *Nesbitt*, 881 F.3d at 380; *Pollard*, 186 F. Supp. 3d at 1176; *Daugherty v. Encana Oil & Gas (USA), Inc.*, 2011 WL 2791338 (D. Colo. July 15, 2011) (holding that fee-shifting and cost-splitting clauses in an arbitration agreement "erect impermissible obstacles to Plaintiffs' ability to avail themselves of the rights and protections afforded by the FLSA").  "Clauses which undermine the FLSA's award of fees to a prevailing employee interfere with employees' effective vindication of FLSA rights through arbitration."  *Pollard*, 185 F. Supp. 3d at 1176.

The three fee-shifting provisions contain some qualifying language that may limit the arbitrator's ability to award fees and costs to the Defendants.  However, for the sake of clarity, to the extent that the fee-shifting provisions would allow Defendants to recover fees and costs arbitrating Plaintiffs' FLSA claims, the Court finds that these provisions erect a barrier to the effective vindication of FLSA rights.  Therefore, the fee-shifting provisions in the arbitration clause are unenforceable and will be severed.

2.    Cost Sharing

In addition to the fee-shifting provisions, Plaintiffs argue that the cost-sharing requirement makes it prohibitively expensive for Plaintiffs to bring claims.  *See Gourley v. Yellow Transp., LLC*, 178 F. Supp. 2d 1196, 1204 (D. Colo. 2001) (finding that, where plaintiffs "aver that they cannot afford the costs associated with arbitration, and do not foresee the ability to pay in the future," enforcement of a cost-sharing provision would prevent effective vindication).  The Court agrees.

14

Plaintiffs present minimal evidence of financial hardship of the arbitration clause's cost-sharing provision. Plaintiffs cite case law referencing the "potential" or "typical" costs of arbitration, ranging from thousands to tens of thousand of dollars, to "*fifty* times the basic costs of litigating in a judicial, rather than arbitral forum." (ECF No. 86 at 12 (emphasis in original).) Plaintiffs then assume that arbitration costs will be consistent with these statements from prior court opinions, claim that "Plaintiffs cannot risk arbitration," and cite to sworn declarations of Ms. Bujok, Ms. Darr,[3] Ms. Nagle, and Ms. Raffaele.[4] (*Id.* at 10–12.) In the declarations, each woman explains her current income and/or financial obligations and attests that she cannot pay the costs of individual arbitration. (ECF Nos. 86-5 ¶ 35 (Bujok) ("Currently, I make $11/hr. There is no way I could afford to pay the costs of individual arbitration."); 86-6 ¶ 69 (Darr) ("Within the last year, I invested a lot of my money in starting my own business and I am still in the process of trying to get it off the ground. There is no way I could afford to pay the costs of individual arbitration."); 86-8 ¶ 33 (Nagle) ("Currently, I earn fifteen dollars an hour, and with that money, I have to support my family, including my two kids. There is no way I could afford to pay the costs of individual arbitration."); 86-9 ¶ 51 ( Raffaele) ("Currently, I make $200 per month. There is no way I could afford to pay the costs of individual arbitration.").)

Defendants, however, fail to present any evidence to contradict Plaintiffs'

_____

[3] Ms. Darr is not a named plaintiff in this case. On July 12, 2017, the Plaintiffs filed a Notice of Consent to Join, whereby Ms. Darr consented to be a plaintiff in the case. (ECF No. 32.)

[4] Plaintiffs did not submit a declaration from Ms. Mantooth about her ability to pay the costs of arbitration. Nor did Plaintiffs submit declarations from any other party who filed a Consent to Join. (ECF Nos. 12, 15, 16, 17, 42.)

otherwise limited assertions of financial hardship. *Cf. Daniels v. Encana Oil & Gas (USA) Inc.*, 2017 WL 3253228, at *5 (D. Colo. Aug. 1, 2017) (weighing the plaintiff's conclusory statement of financial hardship against the defendant's statement that it paid plaintiff between $1.3 and $1.8 million over seven years). Instead, Defendants merely suggest that Plaintiffs may never have to pay costs because of a contingent fee agreement with their counsel, and cite to a declaration of Plaintiffs' counsel detailing the contingency fee agreement. (ECF No. 97 at 13.) This declaration contradicts Defendants' suggestion that Plaintiffs may not incur costs; it specifically states that "all costs in this case will be evenly split among the plaintiffs to this action," though counsel will advance "all expenses reasonably necessary to prosecute" the claim.[5] (ECF No. 99 (Ex. E, Newman Decl.).)[6] Plaintiffs are plainly responsible for costs of arbitration, and have provided declarations stating that they cannot afford such costs.

Although Plaintiffs have provided only limited financial information or evidence on this issue, the Court finds it sufficient to conclude that Plaintiffs Bujok, Darr, Nagle, and Raffaele have demonstrated that they would be unable to vindicate their rights were they required to share the costs of arbitration. Thus, for those Plaintiffs, the Court finds

---

[5] This document was filed under Restricted Access, Level 1. *See* D.C. COLO.LCivR 7.2. To the extent such a filing is quoted or summarized below, the Court has determine that the portion quoted or summarized does not meet the standards for Restricted Access set forth in D.C.COLO.LCivR 7.2(c)(2)–(4).

[6] Defendants provide no authority for considering contingency payment arrangements between Plaintiffs and their counsel when evaluating whether arbitration would be cost prohibitive. Defendants further suggest that Plaintiffs' counsel may, in the future, waive the requirement to pay costs, but provide no legal support for considering that possibility. Were the Court to seriously consider Defendants argument, it would defeat the rationale for statutory fee-shifting provisions and disincentivize meritorious plaintiffs from retaining counsel with contingency fee agreements.

that the cost-sharing provisions of the arbitration clause would prevent effective vindication of their claims.

### 3. Arbitrator with Experience in the Industry

Plaintiffs raise a concern about the ability of either party to demand an arbitrator "experienced in the adult entertainment industry." (ECF Nos. 86 at 14; 57-2 ¶ 22.A.) Defendants characterize Plaintiffs' concern as "mere speculation" and point to the requirement that both parties agree to the arbitrator. (ECF No. 97 at 12–13.)

Arbitration requires a fair forum and an unbiased arbitrator. *Hooters of America, Inc. v. Phillips*, 39 F. Supp. 2d 582, 618 (D.S.C. 1998) (quoting *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145 (1968)). Courts do not generally speculate whether an arbitrator would be biased. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (refusing to speculate about bias where applicable arbitration rules would provide protection against a biased arbitrator). While courts generally reserve allegations of arbitrator bias until after the arbitration, they will consider potential bias where the arbitrator selection provisions are "fundamentally unfair." *McMullen v. Meijer, Inc.*, 355 F.3d 485, 490 (6th Cir. 2004).

For instance, when an arbitration agreement grants one party "unilateral control over the *pool* of potential arbitrators," arbitration is not "an effective substitute for a judicial forum because it inherently lacks neutrality." *Id.* at 488, 494 (holding that a process whereby one party unilaterally selected a pool of potential arbitrators with certain characteristics from which the parties mutually selected an arbitrator by striking names until one remained was "fundamentally unfair") (emphasis added); *see also Hooters of America, Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999) (noting that "given

the unrestricted control that one party (Hooters) has over the panel [of potential arbitrators], the selection of an impartial decision maker would be a surprising result").

Similarly, in *Littlejohn v. TimberQuest Park at Magic, LLC*, the court struck an arbitration requirement that a "neutral arbitrator" be drawn from the zip-line industry where the party seeking to compel arbitration operated an "aerial adventure course." 116 F. Supp. 3d 422, 431 (D. Vt. 2015). The court explained that the clause was "unfair" because it was "not more than a requirement that the arbitration be conducted among friends—or at least people who share the same concerns about defending against claims by injured customers." *Id.* Though the court in *Littlejohn* struck the arbitrator selection clause on grounds of substantive unconscionability, it could have equally done so on the grounds of effective vindication: because one party could restrict the pool of potential arbitrators, arbitration in that forum would "inherently lack neutrality." *See McMullen*, 355 F.3d at 494.

If Defendants insist on an arbitrator from the adult entertainment industry, it is reasonable that, as in *Littlejohn*, an arbitrator with an institutional stake in the outcome would decide the dispute. Unlike the court in *Gilmer*, there are no other arbitration rules that would protect against an unbiased arbitrator. *See* 500 U.S. at 30.

Defendants rightfully point out that both parties must agree to the arbitrator. (ECF No. 97 at 13.) Indeed, there is a degree of mutuality in that either party may demand an arbitrator from the adult entertainment industry, and both parties must assent to the arbitrator. (ECF No. 57-2 ¶ 22.A.) However, if one party exercises that option and the other party does not want such an arbitrator, the situation would be analogous to that in *Littlejohn*—one party would, against their will, have no choice but to

18

select an arbitrator from a particular industry. Though the arbitration selection provision here is not as restrictive as those in *McMullen* or *Hooters*, it still grants Defendants a degree of unilateral control that would render arbitration before any arbitrator selected "fundamentally unfair." *See McMullen*, 355 F.3d at 494; *Hooters*, 173 F.3d at 939. The ability of Defendants to unilaterally restrict the range of background of the arbitrator would taint the selection process and make arbitration an ineffective forum to litigate Plaintiffs FLSA claims. *See McMullen*, 355 F.3d at 494. The Court thus finds that the provision allowing either party to insist on an arbitrator from the adult entertainment industry would prevent effective vindication of claims.

## C.    Severability of Invalid Clauses

"Where a contract contains a 'severability' or 'savings' clause, void or otherwise unenforceable provisions may be severed from the contract." *Pollard*, 186 F. Supp. 3d at 1178 (quoting *Daugherty*, 2011 WL 2791338, at *12).[7] The Agreements contain a severability clause that states if any portion of the Agreement is unenforceable "this Agreement shall, to the extent possible, be interpreted as if that provision was not a part of this Agreement." (ECF 57-2 ¶ 20.) The Court will thus sever the fee-shifting portions of the arbitrability clause to the extent that they impose obligations different from those established in 29 U.S.C. § 216. Similarly, the Court will sever cost-splitting portions to the extent that they impost obligations different from those established in 29 U.S.C. § 216, but only for those Plaintiffs (Ms. Bujok, Ms. Darr, Ms. Nagle, and Ms. Raffaele) who established that cost-splitting would make it prohibitively expensive to

---

[7] The Court rejects Plaintiffs' suggestion that *Daugherty* was wrongly decided.

bring claims in arbitration.

The Court will also sever the provision allowing either party to demand an arbitrator "experienced" in the adult entertainment industry. The Court emphasizes the important of a neutral arbitrator and strongly suggests that the parties consider using established arbitral forums with experience in arbitrating employment disputes, such as the American Arbitration Association (www.adr.org) or JAMS (www.jamsadr.com).

## D. Application of Arbitration Clause to Non-Signatory Defendant Matthews

Defendants contend that Defendant Matthews, a non-signatory to the Agreements, may nonetheless enforce the arbitration clauses therein against the signatory Plaintiffs. Plaintiffs do not seriously contest Defendants' assertion. Indeed, Plaintiffs' entire argument against compelling arbitration with Matthews is contained in a footnote toward the end of the brief and only addresses one of the two scenarios in which a non-signatory may enforce an arbitration agreement. While the Court could consider the matter waived,[8] it will nonetheless briefly consider whether Matthews may proceed in the arbitration.

A contract, including an agreement to arbitrate, may "be enforced by or against non parties to the contract through . . . estoppel." *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (internal quotation marks omitted). Where the contract rights

---

[8] *See United States v. Martinez*, 518 F.3d 763, 768 (10th Cir. 2008) ("But this contention appears only in a fleeting sentence at the conclusion of Mr. Martinez's opening brief, supported by no analysis or citation; without any such development, our precedent instructs us to deem the point waived and leave any such challenge for another day."); *see also United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (deeming waived an argument inadequately developed in opening brief); *Thompson R2-J Sch. Dist. v. Luke P., ex rel. Jeff P.*, 540 F.3d 1143, 1148 n.3 (10th Cir. 2008) (same); *Rojem v. Gibson*, 245 F.3d 1130, 1141 n.8 (10th Cir. 2001) (same).

arise out of state law, application of estoppel is likewise a matter of state law. *Id.* at 630–32. The Court thus looks to Colorado law to determine whether Defendant Matthews may enforce the arbitration provision against the Plaintiffs through estoppel. *Belnap*, 844 F.3d at 1293.

"The Colorado Supreme Court has not addressed whether and under what circumstances equitable estoppel might apply to compel arbitration between a signatory and a nonsignatory." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 709 (10th Cir. 2011); *Santich*, 2017 WL 4251944, at *10. In the absence of a decision from the Colorado Supreme Court, this Court "must attempt to predict what the state's highest court would do." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007) (internal quotation marks omitted). Various judges in this District, including the undersigned, have concluded that the Colorado Supreme Court would likely adopt the 2015 Colorado Court of Appeals decision on the relevant issue in *Meister v. Stout*, 353 P.3d 916 (Colo. App. 2015). *See Gidding v. Fitz*, 2018 WL 480607 (D. Colo. Jan. 19, 2018)*; Santich*, 2017 WL 4251944, at *10; *Pollard v. ETS PC, Inc.*, 186 F. Supp. 3d 1166 (Martinez, J.). This undersigned continues to believe that *Meister* correctly states Colorado law on the relevant issue.

In *Meister*, the Colorado Court of Appeals addressed the circumstances in which a nonsignatory may use equitable estoppel to enforce an arbitration agreement against a signatory to the contract containing the arbitration provision. 353 P.3d 916. Relevant here, equitable estoppel applies (1) "when a signatory alleges substantially interdependent and concerted misconduct by a nonsignatory and one or more signatories to the agreement" and the misconduct is "intertwined with duties or

obligations arising from the contract," or (2) "where a signatory must rely on the terms of a written agreement containing an arbitration provision to assert its claims against a nonsignatory." *Id.* at 921. In a footnote, Plaintiffs address only the second scenario and argue that their FLSA claims do not rely on the Agreements because they conflict with the contents of the Agreements.[9] Defendants contend that Plaintiffs' claims against Matthews are intertwined with the allegations against Shotgun Willie's and that Plaintiffs rely on the Agreements to assert claims against Matthews.

Plaintiffs' claims allege "substantially interdependent and concerted misconduct" against Matthews (a nonsignatory to the Agreements) and Shotgun Willie's (a signatory). Plaintiffs repeatedly refer to "Defendants" collectively and do not distinguish between the actions of the two Defendants. (*See, e.g.*, ECF No. 1 ¶¶ 12, 24, 28, 30, 77, 83.) In the claims for relief, the allegations against Shotgun Willie's and Matthews are indistinguishable. (*See, e.g.*, ECF No. 1 at 20–26.) Moreover, in the limited instances where Plaintiffs address Matthews separately from Shotgun Willie's, Plaintiffs explain the close relationship between the two Defendants. (ECF No. 1 ¶¶ 8, 10, 29.) Thus, the Court finds that Plaintiffs' claims against the signatory Shotgun Willie's are interdependent with those with those against nonsignatory Matthews.

The Court further finds that the interdependent claims against Matthews are intertwined with "duties or obligations arising from the underlying contract." *See Meister*, 353 P.3d at 921–22. In *Santich*, U.S. Magistrate Judge Michael E. Hegarty

_____

[9] Plaintiffs fail to address the first scenario in its entirety. Any challenge that Plaintiffs could have brought under the first scenario is deemed waived. *See United States v. Martinez*, 518 F.3d at 768.

found that claims were intertwined because the arbitrator would have to reference the parties' agreement, including terms, requirements, and duties, to adjudicate Plaintiffs' claims. 2017 WL 4251944, at *11; *see also Pollard*, 186 F. Supp. 3d at 1175 (finding that plaintiffs' FLSA claims were intertwined with their employment agreements because an arbitrator would have to review the agreements to determine the relationship of plaintiffs' claims to the agreements).

Like the claims at issue in *Santich* and *Pollard*, an arbitrator here will have to review the Agreements to determine whether Plaintiffs were employees or independent contractors. Plaintiffs' FLSA claims are intertwined with the Agreements, and Plaintiffs are thus are equitably estopped from preventing Matthews from proceeding in arbitration of the claims in the Complaint. The Court thus compels arbitration of claims against both Defendants.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.  Defendants' Motion to Compel (ECF No. 57) is GRANTED IN PART and DENIED IN PART as follows:

    a.  Each Plaintiff, to the extent she wishes to pursue her claim, must individually arbitrate with both Defendants;

    b.  Any portion of any Agreement that any Plaintiff may have with Defendants is SEVERED to the extent it (a) establishes a fee-shifting obligation different from those established in 29 U.S.C. § 216(b), or (b) allows either party to request an arbitrator experienced in the adult entertainment industry;

c. Any portion of any Agreement that Plaintiffs Bujok, Darr, Nagle, and Rafaele may have with Defendants is SEVERED to the extent that it establishes a cost-splitting obligation different from that established in 29 U.S.C. § 216(b);

d. This action is hereby STAYED pending the conclusion of Plaintiffs' individual arbitration proceedings; and

e. Defendants' Motion to Compel is otherwise DENIED;

2. Plaintiffs' Expedited Motion to Proceed as a Conditional Collective Action, Provide Notice, and Toll All Statutes of Limitations (ECF No. 43) is DENIED AS MOOT without prejudice to refiling, subject to the disposition of the arbitration;

3. Defendants' Motion to Continue Proceedings Pursuant to FRCP 6(b) on Plaintiffs' Expedited Motion to Proceed as a Conditional Collective Action, Provide Notice, and Toll All Statutes of Limitations (ECF No. 44) is DENIED AS MOOT;

4. Plaintiffs' Motion to Certify to the Colorado Supreme Court (ECF No. 83) is DENIED AS MOOT; and

5. Pursuant to D.C.COLO.LCivR 41.2, the Clerk shall ADMINISTRATIVELY CLOSE this case, subject to a motion to reopen for good cause subsequent to the conclusion of all of the Plaintiffs' individual arbitration proceedings.

Dated this 16th day of May, 2018.

BY THE COURT:

William J. Martinez
United States District Judge