**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 17-cv-1150-WJM-MEH

CHADA MANTOOTH,
GALE RAFFAELE,
ALEXIS NAGLE, and
NICOLE BUJOK, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

BAVARIA INN RESTAURANT, INC., d/b/a Shotgun Willie's, and
DEBRA MATTHEWS,

      Defendants.

_____

## OMNIBUS ORDER ON PENDING MOTIONS
_____

The underlying claims in this lawsuit concern whether a local landmark establishment, Defendant Bavaria Inn Restaurant Inc. d/b/a/ Shotgun Willie's ("Shotgun Willie's"), and its owner Defendant Debra Matthews (jointly, "Defendants") improperly classified named Plaintiffs Chada Mantooth, Gale Raffaele, Alexis Nagle, Nicole Bujok ("named Plaintiffs"), in addition to opt-in plaintiffs (jointly, "Plaintiffs") as independent contractors and underpaid Plaintiffs in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the Colorado Wage Claim Act, Colo. Rev. Stat. §§ 8-4-101 *et seq.* ("CWCA"), and Colorado common law.  (ECF No. 1.)

Defendants moved to compel arbitration.  The Court previously granted in part Defendants' motion to compel arbitration (the "Order").  (ECF No. 124.)  The Court compelled arbitration but struck certain fee-shifting and arbitrator selection clauses in

the parties' arbitration agreements, as well as the cost-shifting clause of the agreements for Bujok, Nagle, Raffaele, and opt-in plaintiff Alexandra Darr. (*Id.* at 23–24.)

The parties were not wholly satisfied with the Court's resolution of Defendants' motion to compel. Defendants filed a "Motion for Partial Reconsideration" ("Reconsideration Motion") asking the Court to revisit its decision to sever provisions under the effective vindication doctrine based on the Supreme Court's decision in *Epic Systems Corporation v. Lewis*, 138 S. Ct. 1612, 1619 (2018). (ECF No. 125.) Plaintiffs filed a version of a motion for reconsideration titled "Motion for Partial Relief from Order Granting In Part Defendants' Motion to Compel Arbitration" ("Relief Motion") asking the Court to strike the cost-shifting provisions in the arbitration contracts of Mantooth and the remaining opt-in plaintiffs. (ECF No. 127.) Defendants then filed a motion to strike certain exhibits attached to Plaintiffs' reply in support of the Relief Motion or, in the alternative, to allow a sur-reply ("Motion to Strike"). (ECF No. 142.)

For the reasons explained below, the Court grants in part Defendants' Reconsideration Motion; grants in part Defendants' Motion to Strike; and grants in part Plaintiffs' Relief Motion in the interest of justice.

## I. BACKGROUND & PROCEDURAL HISTORY

The underlying factual basis for these motions is discussed in the Order. Familiarity with that factual background is presumed.

In relevant summary, named Plaintiffs and opt-in plaintiffs Darr and Jessica Lopez signed "Entertainment License Agreements" to work at Shotgun Willie's. These

agreements contained an arbitration provision.[1]  (ECF No. 57-2 ¶ 22.)  That provision delegated exclusive authority to resolve disputes over the validity or enforceability of the agreement to the arbitrator; allowed Defendants to insist on an arbitrator "experienced in the adult entertainment industry"; and contained four provisions concerning arbitration fees and costs:

- "The costs of the arbitration shall be borne equally by the entertainer and the club unless the arbitrator concludes that a different allocation is required by law."  (*Id.* ¶ 22.A.)

- "In the event that any party challenges, or is required to initiate proceedings to enforce, the arbitration requirements of this paragraph 22, the prevailing party to such challenges and/or enforcement proceedings shall be entitled to an award of all costs, including actual and reasonable attorney fees, incurred in litigation such issues."  (*Id.* ¶ 22.D.)

- "Any ruling arising out of a claim between the parties shall, to the extent not precluded by applicable law, award costs incurred for the proceedings and reasonable attorney fees to the prevailing party."  (*Id.* ¶ 22.E.)

- The arbitrator "shall be permitted to award, subject only to the restrictions contained in this paragraph 22, any relief available in a court."  (*Id.* ¶ 22.A.)

---

[1] The arbitration provisions in the operative versions of each agreement signed by the named Plaintiffs are identical.  (ECF Nos. 57-2, 57-4, 57-8 & 57-10.)  Defendants also imply that Darr and Lopez had identical arbitration agreements, although those agreements are not before the Court.  (ECF No. 57 at 2 n.2.)  Plaintiffs do not appear to dispute that implicit claim. (*See generally* ECF No. 82.)  Thus, for purposes of analysis, the Court will assume that the arbitration clauses in the contracts of the named Plaintiffs, Darr, and Lopez are identical.

On October 16, 2017, Defendants moved to compel "Plaintiffs"—defined as "named Plaintiffs, Alexandra Darr and Jessica Lopez"—to arbitrate their claims.[2] (ECF No. 57 at 2 n.2.) In response, "Plaintiffs"—defined as "Named and Opt-in Plaintiffs, and putative class/collective action members"—objected to the motion to compel in part because the fee- and cost-shifting provisions of their arbitration agreements prevented "Plaintiffs" from effectively vindicating their claims. (ECF No. 86 at 1 n.1, 11.) In support, these Plaintiffs submitted evidence from Bujok, Darr, Nagle, and Raffaele about their ability to share arbitration costs, as well as the financial hardship the cost-sharing provision would impose. (ECF Nos. 86-5, 86-6, 86-8 & 86-9.)

In its Order, the Court granted in part the motion to compel. (ECF No. 124.) The Court also found that, for Bujok, Darr, Nagle, and Raffaele, arbitration costs would be thousands to tens of thousands of dollars; "the cost-sharing provisions of the arbitration clause would prevent effective vindication of their claims"; and thus the Court severed the cost-sharing provisions for those individuals. (*Id.* at 16–17.) The Court did not, however, sever the cost-sharing provisions for Mantooth or Lopez because they did not submit evidence of financial hardship. The Court also severed certain fee-shifting provisions and the arbitrator selection clause—a provision that would have allowed Defendants to demand an arbitrator "experienced in the adult entertainment industry"—for named Plaintiffs, Darr, and Lopez because in the Court's view such clauses would have prevented effective vindication of Plaintiffs' rights. (*Id.* at 14, 19–20.)

---

[2] The named Plaintiffs in this action are Mantooth, Bujok, Nagle, and Raffaele.

Five days after the Court's Order, the Supreme Court issued its opinion in *Epic Systems Corporation v. Lewis*, resolving the question of whether "employees and employers [should] be allowed to agree that any disputes between them will be resolved through one-on-one arbitration." 138 S. Ct. 1612, 1619 (2018). The Supreme Court held that the National Labor Relations Act, which "secures to employees rights to organize unions and bargain collectively," did not "manifest[ ] a clear intention to displace the Arbitration Act." *Id.* at 1619, 1632. Thus, the arbitration contracts at issue in *Epic*—which required employees to arbitrate individually rather than collectively— were to be enforced as written.

Based on *Epic*, Defendants filed their Reconsideration Motion arguing that *Epic* eviscerated the effective vindication doctrine. (ECF No. 125.) Defendants asked that the Court revisit its decision to strike the fee- and cost-shifting provisions under the effective vindication doctrine.[3] (*Id.* at 2.)

Plaintiffs filed their Relief Motion asking the Court to invalidate the cost-sharing requirement for "the remaining Plaintiffs (named Plaintiff Chada Mantooth and opt-in Plaintiffs Ariel Cline, Samantha Hattlestad, Ashley Howard, Jessica Lopez, and Allison Bonham)" as "'similarly situated employees' to the Plaintiffs who previously submitted declarations." (ECF No. 127 at 2.) Plaintiffs attached affidavits from Mantooth, Cline, Hattlestad, Howard, Lopez, and Bonham about their inability to pay arbitration costs. (ECF Nos. 127-1, 127-2, 127-3, 127-4, 127-5 & 127-6.)

---

[3] It should be noted that Defendants do not seek reconsideration of the portion of the Court's Order severing the arbitrator selection clause, even though it was severed under the same effective vindication rationale as the fee- and cost-shifting provisions.

Plaintiffs attached two exhibits to their reply in support of their Relief Motion about the expense of arbitration.  (ECF Nos. 140-1 & 140-2.)  Defendants then filed the Motion to Strike those exhibits and asked that the Court disregard any new arguments that relied on the newly-included information.  (ECF No. 142.)

## II. LEGAL STANDARD

While the Federal Rules of Civil Procedure do not directly provide for a motion to reconsider an interlocutory ruling, district courts have broad discretion to reconsider their interlocutory rulings before the entry of judgment.  *See Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) ("[D]istrict courts generally remain free to reconsider their earlier interlocutory orders."); Fed. R. Civ. P. 54(b) ("[A]ny order . . . that adjudicates fewer than all the claim or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment.").  Thus, a court can alter its interlocutory orders even where the more stringent requirements applicable to a motion to alter or amend a final judgment under Rule 59(e) or a motion for relief from judgment brought pursuant to Rule 60(b) are not satisfied.  *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1024 (10th Cir. 2018).

"Notwithstanding the district court's broad discretion to alter its interlocutory orders, the motion to reconsider 'is not at the disposal of parties who want to rehash old arguments.'"  *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000) (quoting *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. 1995)).  "Rather, as a practical matter, to succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse

its prior decision." *Id.* (internal quotation marks omitted and alterations incorporated).

Even under this lower standard, "[a] motion to reconsider should be denied unless it

clearly demonstrates manifest error of law or fact or presents newly discovered

evidence." *Id*. (alterations incorporated); *see Sanchez v. Hartley*, 2014 WL 4852251, at

*2 (D. Colo. Sept. 30, 2014) (refusing to reconsider an interlocutory order where the

defendants did not show "an intervening change in the law, newly discovered evidence,

or the need to correct clear error or manifest injustice"). The Court may be guided by

Rules 59 and 60 standards in deciding whether to alter or vacate an interlocutory order.

*Perkins v. Fed. Fruit & Produce Co. Inc.*, 945 F. Supp. 2d 1225, 1232 (D. Colo. 2013).

### III. ANALYSIS

Before analyzing the parties' motions, the Court addresses two preliminary

matters. First, the subject Order directed the Clerk of Court to administratively close

this case, subject to reopening for good cause shown after the conclusion of the

individual arbitration proceedings. The parties have not specifically requested

reopening of the case in their motions currently pending before the Court. Nonetheless,

the Court finds that good cause exists for reopening this matter and *sua sponte* orders

that the case be reopened.

Second, the Court clarifies the scope of the initial Order compelling arbitration.

On October 16, 2017, Defendants sought to compel "Plaintiffs"—defined as Mantooth,

Bujok, Darr, Lopez, Nagle, and Raffaele—to arbitrate their claims.[4] (ECF No. 57.) At

---

[4] Defendants' motion to compel was, in fact, a renewed motion to compel. Defendants initially moved to compel arbitration on June 26, 2017. On July 19, 2017, the Court denied Defendants' initial motion without prejudice subject to later refiling after limited, expedited discovery. (ECF No. 38.) The renewed motion to compel was not a replica of the prior motion.

that time, Bonham, Cline, Hattlestad, and Howard had also opted into the litigation by filing notices of consent to join.[5]  (ECF Nos. 12, 15, 16 & 17.)  Because Defendants moved for arbitration only as to Mantooth, Bujok, Darr, Lopez, Nagle, and Raffaele, the Court's corresponding Order therefore applies only to those individuals, and does not apply to Bonham, Cline, Hattlestad, and Howard.

## A.    Defendants' Motion to Reconsider

Defendants ask the Court to reconsider its Order severing the fee- and cost-shifting provisions in light of *Epic*, issued a mere five days after the May 16, 2018 Order.  *See Nat'l Bus. Brokers*, 115 F. Supp. 2d at 1256 ("A motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence." (alteration incorporated)).  "An 'intervening change in the controlling law' is . . . [an] appropriate ground upon which to seek reconsideration." *Gomez v. Kroll Factual Data, Inc.*, 2014 WL 5395099, at *3 (D. Colo. Oct. 22, 2014) (citing *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

Defendants argue that the *Epic* decision held that

> unless a provision in an arbitration agreement directly conflicts with the express language of a statute, it must be enforced as written.  Hence, the Supreme Court has now implicitly, if not directly, rejected the imposition of policy-based reasons for invalidating provisions in arbitration

---

Defendants added to their definition of "Plaintiffs" both Darr and Lopez, who filed notices of consent to join on July 12, 2017, and September 5, 2017, respectively, after Defendants' initial motion to compel.  (ECF Nos. 32 & 42.)

[5] Bonham filed a notice of consent to join on May 18, 2017.  (ECF No. 16.)  Cline filed a notice of consent to join on May 17, 2017.  (ECF No. 15.)  Hattlestad filed a notice of consent to join on June 5, 2017.  (ECF No. 17.)  Howard filed a notice of consent to join on May 15, 2017.  (ECF No. 12.)

agreements such as the "effective vindication of rights" doctrine.

(ECF No. 125 at 2.)  According to Defendants, the fee- and cost-shifting provisions do not directly conflict with the FLSA and thus, Defendants argue, the Court should allow an arbitrator to determine if such provisions are enforceable.  (*Id.* at 2, 6.)  Defendants misapprehend the scope of *Epic* and its impact on the effective vindication doctrine.

      1.    *The Effective Vindication Doctrine*

The Supreme Court has "developed a mechanism—called the effective-vindication rule—to prevent arbitration clauses from choking off a plaintiff's ability to enforce congressionally created rights" and bars applying such clauses only when they operate "to confer immunity from potentially meritorious federal claims."  *Am. Ex. Co. v. Italian Colors Rest.*, 570 U.S. 228, 241 (2013) (Kagan, J., dissenting).  This judicially-created exception to the Federal Arbitration Act ("FAA") allows courts to harmonize the FAA's policy favoring arbitration with other federal statutory rights.  *Id.* at 235–36 (maj. op.).  The doctrine exists to "prevent 'prospective waiver of a party's *right to pursue* statutory remedies.'"  *Id.* at 236 (quoting *Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)).  Thus, federal courts generally compel arbitration unless an arbitral forum prevents a prospective litigant from effectively vindicating its statutory cause of action, and as a consequence effectively prevents the federal statute from serving its remedial and deterrent function.  *Id.*; *see Bechtold v. Santander Consumer USA, Inc.*, 2015 WL 5455617, at *1 (D. Colo. July 30, 2015) ("The presumption in favor or arbitration does not control, however, where the terms of an arbitration agreement prevent an individual from effectively vindicating his or her

statutory rights." (internal quotation marks omitted)).  Likewise, the Tenth Circuit recognizes the FAA's presumption in favor of enforcing arbitration agreements, but "concluded that this presumption falters 'if the terms of an arbitration agreement actually prevent an individual from effectively vindicating his or her statutory rights.'" *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 377 (10th Cir. 2016) (quoting *Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999)).

Inability to access a neutral tribunal—whether a court or arbitral panel—prospectively waives that party's right to pursue its statutory remedies.  *See Italian Colors*, 570 U.S. at 236.  As the Court observed in *Italian Colors*, the effective vindication doctrine "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights."  *Id.*  The Court suggested that the doctrine would also "cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable."  *Id.*; *see Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 60 (2000).  Such a result is consistent with the FAA's saving clause, which allows a court to refuse to enforce an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  *See also McMullen v. Meijer, Inc.*, 355 F.3d 485, 491 (6th Cir. 2004) (holding that the language of the savings clause "sufficiently encompasses the 'effective vindication' analysis prescribed by the United States Supreme Court").

2.      *Supreme Court's Decision in* Epic

In *Epic*, employees sought to litigate FLSA and state law claims through class or collective actions in federal court, notwithstanding contracts that mandated individualized arbitration of their claims.  138 S. Ct. at 1616.  The employees generally

argued that the saving clause removes the obligation to enforce arbitration agreements as written when the arbitration agreement violates some other federal law. *Id.* The employees thus argued that the individualized arbitration provision violated the National Labor Relations Act ("NLRA"), which guarantees workers the right to organize and bargain collectively.

The Court held that the savings clause applies to "defenses that apply to 'any' contract," and "by attacking (only) the individualized nature of the arbitration proceedings, the employees' argument seeks to interfere with one of arbitration's fundamental attributes," namely the "traditionally individualized and informal nature of arbitration." *Id.* at 1622–23. More importantly, the Court found that "[n]othing in our cases indicates that the NLRA guarantees class and collective action procedures, let alone for claims arising under different statutes [here, the FLSA] and despite the express . . . teachings of the Arbitration Act." *Id.* at 1628. Because NLRA did not provide a right to collective adjudication of FLSA claims, the NLRA did not override the FAA's general mandate to enforce arbitration agreements as written. The Court held that, under these circumstances, the "arbitration agreements like those before use must be enforced as written" and concluded that the employees could not bring collective FLSA claims in arbitration. *Id.* at 1632.

The Court recognized, however, that the employees may agree to bilaterally arbitrate disposition of their FLSA claims. *Id.* at 1632. The decision in *Epic* merely limited the manner in which such a claim may be brought, not the employees' right to bring substantive FLSA claims in individualized arbitration. *See id.* at 1626; *Werner v. Waterstone Mortg. Corp.*, 2018 WL 6567081, at *3 (W.D. Wis. Dec. 13, 2018) ("[T]he

question in [*Epic Systems v.*] *Lewis* was limited to whether the class action waiver in the arbitration agreement was enforceable.").

3.    *Impact of* Epic *on the Effective Vindication Doctrine*

While *Epic* broadly favors enforcing arbitration agreements as written,[6] it has not been—nor should it be—construed so expansively that it eliminates the long-standing effective vindication doctrine.  *See* 138 S. Ct. at 1621 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  On its face, and contrary to Defendants' suggestion, *Epic* does not directly reject the effective vindication doctrine. 138 S. Ct. 1612.  Indeed, it never so much as mentions effective vindication.  *Id.*

Nor did *Epic* undermine the rationale for the effective vindication doctrine, a policy-based exception to the FAA's general approach to favoring arbitration.  Rather, in striving to harmonize two federal statutes, namely the NLRA and the FAA, the Court found that the NLRA did "not express approval or disapproval of arbitration" nor "mention class or collective action procedures."  *Id.* at 1625.  Thus, the Court merely concluded that the NLRA did not mandate that FLSA claims be decided collectively, the employees could waive their right to pursue claims collectively in arbitration, and the employees could still pursue their statutory rights granted by the FLSA in individual arbitration.  *Id.* at 1632.  In other words, the individual arbitration provision at issue did not "choke off" the employees "ability to enforce congressionally created rights."  *Id.*;

---

[6] At least one court post-*Epic* has questioned the underlying premise that arbitration provides real benefits in the employment contexts: "scholars have continued to test those assumptions and have seemingly unsettled the notion that arbitration is superior or even sufficiently comparable to litigation.  There is certainly some data suggesting that the arbitral forum's downsides may outweigh its benefits, as least for vulnerable workers."  *Styczynski v. MarketSource, Inc.*, 340 F. Supp. 3d 534, 548 (E.D. Pa. 2018).

*see Italian Colors*, 570 U.S. at 241.

Moreover, from this Court's review of all cases citing *Epic*, as well as cases referencing the effective vindication doctrine post-*Epic*, no court to date has read *Epic* to abrogate the effective vindication doctrine. Nor have Defendants filed any supplemental authority calling this conclusion into question. Significantly, since the *Epic* decision, district courts across the country have continued to analyze whether certain provisions of an arbitration agreement would prevent effective vindication of a party's substantive rights. *See, e.g.*, *Grigsby v. Income Prop. USA, LLC*, 2018 WL 4621766, at *7 (D. Utah Sept. 26, 2018) (refusing to compel arbitration where fee-shifting clause would prevent the plaintiffs from effectively vindicating their RICO claim), *appeal filed*, No. 18-4143 (10th Cir. Oct. 3, 2018); *Clough v. W.-Shamrock Corp.*, 2018 WL 4183223, at *1 (W.D. Okla. Aug. 31, 2018) (finding that fee-shifting provisions would prevent plaintiff from effectively vindicating her rights).[7] *See also Am. Family Life*

---

[7] *See also Castillo v. CleanNet USA, Inc.*, 2018 WL 6619986, at *17–18, 21–22 (N.D. Cal. Dec. 18, 2018) (finding that the plaintiff met its burden to show that prohibitive costs would likely be imposed and concluding that a cost-shifting provision prevented effective vindication of substantive rights afforded by a federal statute); *Mohammad v. T-Mobile USA, Inc.*, 2018 WL 6249910, at *1 (E.D. Cal. Nov. 29, 2018) (effective vindication argument mooted by the defendants' offer to pay arbitration costs); *Elliot v. NTAN, LLC*, 2018 WL 6181351, at *7 (M.D. Tenn. Nov. 27, 2018) (finding that a plaintiff failed to demonstrate that fees and costs would prevent effective vindication of claims in arbitration); *Garcia v. MaineGeneral Health*, 2018 WL 6071998, at *4 (D. Me. Nov. 20, 2018) ("The parties' relative resources, standing alone, do not impact whether the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum." (internal quotation marks omitted and alterations incorporated)); *Curtis v. Contractor Mgmt. Servs., LLC*, 2018 WL 6071999, at *7 (D. Me. Nov. 20, 2018) (analyzing whether a cost-sharing provision prevented effective vindication of FLSA claims); *Greene v. OneMain Fin. Grp., LLC*, 2018 WL 5831681, at *1 (M.D.N.C. Nov. 7, 2018) (finding that "only conclusory, unsubstantiated[ ] statements . . . [were] not sufficient to satisfy" the plaintiff's burden to show that she could not effectively vindicate her rights); *Smiley v. Forcepoint Fed., LLC*, 2018 WL 5787468, at *1 (E.D. Va. Nov. 5, 2018) (finding that a plaintiff failed to demonstrate that an arbitration agreement prevented him from effectively vindicating his claims in arbitration); *Titus v. ZestFinance, Inc.*, 2018 WL 5084844, at *3 (W.D. Wash. Oct. 18, 2018) (analyzing "whether the exception to the general policy favoring arbitration—the

13

*Assurance Co. of Columbus*, 2019 WL 115102, at *6 (11th Cir. Jan. 7, 2019) (assuming

that "an arbitration agreement could be substantively unconscionable if it imposed such

great arbitration costs that it effectively denied a party an opportunity to vindicate her

rights in the arbitral forum"); *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1260 (10th Cir.

2018) (confirming the district court's analysis that, under California law, a fee-shifting

clause may be unconscionable if it involves "unwaivable statutory rights").

      Other courts have referenced the effective vindication doctrine and assumed its

continued existence and viability post-*Epic*.  *See Santich v. VCG Holding Corp.*, 2018

WL 3968879, at *4 (D. Colo. Aug. 20, 2018) (noting that no party objected to the U.S.

Magistrate Judge's determination that fee- and cost-shifting provisions precluded the

plaintiffs from effectively vindicating their FLSA claims); *Keyes v. The Ayco Company,*

*L.P.*, 2018 WL 6674292, at *6 (N.D.N.Y. Dec. 19, 2018) (the doctrine allows courts to

---

effective vindication exceptions—applies"), *appeals docketed*, Nos. 18-35940 & 18-35943 (9th
Cir. Nov. 1, 2018 & Nov. 2, 2018); *Burnley v. Conifer Health Sols.*, 2018 WL 4323935, at *2
(W.D. Ky. Sept. 10, 2018) (recognizing that the Sixth Circuit interprets § 2 of the FAA to require
that the arbitral forum permit the effective vindication of rights); *In re Zetia (Ezetimibe) Antitrust
Litig.*, 2018 WL 4677830, at *7–9 (E.D. Va. Sept. 6, 2018) (finding that arbitration provisions
limiting damages and attorneys' fees available on antitrust claims prevented effective
vindication of plaintiffs' claims in arbitration); *Wells Fargo Bank, Nat'l Ass'n v. Cabell*, 2018 WL
4659255, at *1 (E.D. Tex. Sept. 6, 2018) (defendants failed to offer any evidence that arbitration
would deprive them of substantive rights), *report and recommendation adopted*, 2018 WL
4655718 (E.D. Tex. Sept. 26, 2018); *Williams v. Dearborn Motors 1, LLC*, 2018 WL 3870068, at
*5 (E.D. Mich. Aug. 15, 2018) (acknowledging the existence of the effective vindication doctrine
and the Supreme Court's *Epic* decision, and determining that the contractual terms did not
prevent plaintiffs' rights to pursue their statutory remedies under certain civil rights statutes);
*The Shipman Agency, Inc. v. TheBlaze Inc.*, 315 F. Supp. 3d 967, 970 (S.D. Tex. 2018)
(holding that arbitration clauses are valid provided that they allow an employee to effectively
vindicate his statutory rights); *Robertson v. Fiesta Rest. Grp., Inc.*, No. 3:17-CV-00384, 2018
WL 3130677, at *1 (S.D. Tex. June 8, 2018), *report and recommendation adopted*, 2018 WL
3121877 (S.D. Tex. June 26, 2018) (finding that where an employer is obligated to pay "virtually
all arbitration-related expenses," arbitration did not prevent employee from vindicating his rights
in arbitration);  *Williams v. FCA US LLC*, 2018 WL 2364068, at *8 (E.D. Mich. May 24, 2018)
(concluding that an individual arbitration requirement did not prevent effective vindication of the
plaintiffs' Title VII rights).

invalidate agreements that prevent effective vindication of federal statutory rights, but not state-law claims); *Trout v. Organizacion Mundial de Boxeo, Inc.*, 2018 WL 4719104 (D.P.R. Sept. 30, 2018) (plaintiff could effectively vindicate his statutory cause of action in an arbitral forum); *Covington v. Kanan Enters., Inc.*, 2018 WL 4411652, at *1 (N.D. Ohio Sept. 17, 2018) (FLSA claims may be effectively vindicated in an arbitral setting); *McLellan v. Fitbit, Inc.*, 2018 WL 3549042, at *5 (N.D. Cal. July 24, 2018) (recognizing that "effective vindication is a judge-made exception to the FAA" (internal quotation marks omitted)); *Buchanan v. Tata Consultancy Servs., Ltd.*, 2018 WL 3537083, at *8 (N.D. Cal. July 23, 2018); *In re Homaidan*, 587 B.R. 428, 431 (Bankr. E.D.N.Y. 2018) (analyzing *Epic* and whether to compel arbitration in a bankruptcy case).

In conclusion, both the text of the *Epic* decision, as well as the overwhelming weight of subsequent lower-court authority, fail to support Defendants' position on this issue in its Reconsideration Motion. The effective vindication doctrine remains viable after *Epic*. As discussed in the Order and further discussed below, Plaintiffs have made sufficient financial showings that the burden of fees and costs will effectively and prospectively prevent them from bringing their claims in arbitration. Thus, the Court will not revisit its conclusion that those provisions, as applied to Plaintiffs, prospectively prevent Plaintiffs from effectively vindicating their statutory FLSA rights in arbitration and that severance of those provisions is appropriate in this case.

2.    *Clarifying Scope of the Order*

Defendants raise a question about the scope of the Court's prior Order. The Court ordered that "the fee-shifting provision in the arbitration clause are unenforceable and will be severed" (ECF No. 124 at 14), but later stated that "[a]ny portion of any

Agreement that any Plaintiff may have with Defendants is SEVERED to the extent it (a) establishes a fee-shifting obligation different from those established [under the FLSA]" (*id.* at 23).[8] Defendants argue that none of the severed provisions directly conflict with the FLSA, and thus the Court improperly severed the provisions. To the extent these rulings have created any ambiguity on this point, the Court will clarify its prior Order.

The Court previously found that the fee-shifting provisions, which allowed Defendants to recover fees and costs for arbitrating Plaintiffs' FLSA claims, erected a barrier to the effective vindication of Plaintiffs' FLSA claims. It was the Court's intent to sever all fee- and cost-shifting obligations because they prevented effective vindication of Plaintiffs' FLSA claims, but to nonetheless allow Plaintiffs to recover attorneys' fees and costs in the event they are prevailing parties, consistent with the private attorney general enforcement scheme of the FLSA. In other words, the arbitrator will be free to award any manner of relief otherwise available in the federal court litigation of FLSA claims.

Finally, to the extent that Defendants ask the Court to reconsider its prior Order based on arguments other than the *Epic* decision, Defendants have failed to provide any new facts, law, or circumstances, or argued mistake of law or fact, or otherwise plausibly argued why such relief is appropriate and necessary to effect the interest of justice. *See Servants of the Paraclete*, 204 F.3d at 1012. Therefore, the remainder of

---

[8] The FLSA provides that a court "shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action" to a prevailing plaintiff. 29 U.S.C. § 216(b). The Tenth Circuit has interpreted this language to entitle a prevailing defendant to attorney's fees "only where the district court finds that the plaintiff litigated in bad faith." *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1148 (10th Cir. 2014) (quoting *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1437 (11th Cir. 1998)).

Defendants' Reconsideration Motion is denied.

## B.    Plaintiffs' Relief Motion

Plaintiffs ask the Court to sever and strike the cost-shifting provisions of the arbitration clauses for Mantooth and Lopez under same effective vindication analysis that it applied to Bujok, Darr, Nagle, and Raffaele.[9]  Plaintiffs analogize to the Rule 60(b) standards for relieving a party from a final judgment or order, and ask the Court to grant relief on three alternate grounds: (1) in the interest of justice; (2) mistake of fact; and (3) excusable neglect. (ECF No. 127 at 3–5.)  *See* Fed. R. Civ. P. 60(b).[10]

Federal Rule of Civil Procedure 60(b) permits the court to relieve a party from a final judgment, order or other proceeding on the grounds of "mistake, inadvertence, surprise, or excusable neglect," or "any other reason that justifies relief."  The Court is "mindful that Rule 60(b) 'relief is extraordinary and may only be granted in exceptional circumstances.'"  *Beugler v. Burlington Northern & Santa Fe Ry. Co.*, 490 F.3d 1224, 1229 (10th Cir. 2007) (citing *Amoco Oil Co. v. EPA*, 231 F.3d 694, 697 (10th Cir. 2000)).  A motion for relief under Rule 60(b) is addressed to the sound discretion of the trial court and generally will not be disturbed except for a manifest abuse of discretion.

---

[9] Plaintiffs also seek to strike the cost-shifting clauses for Bonham, Cline, Hattlestad, and Howard.  However, as discussed above, Defendants' motion to compel, and the Court's Order granting in part that motion, did not apply to these opt-in plaintiffs.  The Court will not decide matters not properly before the Court, and declines to express any opinion on whether the cost-shifting provisions should be struck for those four individuals.

[10] Defendants contend that Rule 60(b) is inapplicable to Plaintiffs' Relief Motion.  As a technical matter, Defendants are correct, but not in a way that favors them.  On a motion for reconsideration of an interlocutory order, the Court has broad discretion to alter its prior orders and, while not bound by the strictures of Rules 59 and 60, may look to them for guidance.  *See Spring Creek*, 887 F.3d at 1024; *Perkins*, 945 F. Supp. 2d at 1232.  In the broad discretion reserved to courts for reconsideration of their interlocutory orders, the Court looks to Rule 60 for guidance.

*Zimmerman v. Quinn*, 744 F.2d 81, 82 (10th Cir. 1984).

The Court need only analyze Plaintiffs' interest of justice arguments. Rule 60(b)(6) permits a court to grant relief for "any other reason justifying relief." "Rule 60(b)(6) has been described as a 'grand reservoir of equitable power to do justice in a particular case.'" *Cashner*, 98 F.3d at 579 (quoting *Pierce v. Cook & Co.*, 518 F.2d 720, 722 (10th Cir. 1975) (en banc)).

The Court finds that it is in the interest of justice, and consistent with the remedial purpose of the FLSA, to resolve FLSA claims on their merits, rather than potentially prevent resolution of those claims because of a plaintiff's inability to pay arbitration costs. The FLSA is a "comprehensive remedial scheme requiring a minimum wage and limiting the maximum number of hours works, absent payment of an overtime wage for all hours worked in excess of the specified maximum number." *Lamon v. City of Shawnee, Kan.*, 972 F.2d 1145, 1149 (10th Cir. 1992). "The prime purpose in enacting the FLSA was to aid the unprotected, unorganized and lowest paid employees who lack sufficient bargaining power to secure for themselves a minimum subsistence wage." *Teague v. Acxiom Corp.*, 2018 WL 3772865, at *2 (D. Colo. Aug. 9, 2018) (internal quotation marks omitted and alterations incorporated). Similar to a number of anti-discrimination and civil rights statutes, the FLSA gives plaintiffs a private right of action to remedy injuries to important personal rights. *Turner v. Chipotle Mexican Grill, Inc.*, 123 F. Supp. 3d 1300, 1305 (D. Colo. 2015); *see Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 983 (10th Cir. 2002) ("[W]e must be mindful of [antidiscrimination laws'] remedial purposes, and liberally interpret their provisions to that end."). Thus, in the FLSA context, employees can pursue a claim against an

18

employer for unpaid wages and overtime compensation as well as liquidated damages. 29 U.S.C. § 216.

The affidavits submitted by Mantooth and Lopez establish that paying half of the arbitration costs would pose a significant financial burden, such that they would be unable to pursue their claims against Defendants in arbitration.[11]  (ECF No. 127 at 1–2 (Mantooth: "I'm not even able to make ends meet right now, so I'm not sure how I would find the money to pay for arbitration, which I understand could cost thousands of dollars."); ECF No. 127-4 at 1 (Lopez: "I receive welfare benefits, include TANF and SNAP, due to my low income . . .  I have no idea how I would pay for arbitration, especially if it's going to cost thousands of dollars.").)  Plaintiffs previously established, and the Court credited, that the cost of arbitration was likely to be at least thousands of dollars.  (ECF No. 124 at 15.)  The Court concludes, therefore, that the cost-shifting provision of the arbitration agreements would prevent Mantooth and Lopez from effectively vindicating their rights under the FLSA.  In the interest of justice and toward the end of promoting resolution of remedial claims under the FLSA on their merits, the

---

[11] In their reply in support of the Relief Motion, Plaintiffs submit two exhibits regarding the cost of arbitration, which are the subject of Defendants' Motion to Strike.  (ECF Nos. 140-1, 140-2 & 142.)  Defendants alternatively move to file a sur-reply.  (ECF No. 142.)  The Court has already credited Plaintiffs' evidence and found that arbitration costs range from "thousands to tens of thousands of dollars, to '*fifty* times the basic costs of litigating in a judicial, rather than arbitral forum.'"  (ECF No. 124 at 15 (citing ECF No. 86 at 12) (emphasis in original).)  The Court sees no reason to revisit that finding, even though Defendants question its premise in their response to the Relief Motion.  Thus, the Court need not rely on the exhibits because it has already found the cost of arbitration to be much greater than the cost of litigating before this Court.  In addition, because the exhibits were attached to Plaintiffs' reply brief, Defendants have not had an opportunity to respond to the arguments that depend on these exhibits, and thus seek to exclude them from the Court's consideration.  Because of the belated inclusion of these exhibits and because the Court's decision today does not rely on them, the Court grants Defendants' Motion to Strike (ECF No. 142).  Because the Court grants the primary relief Defendants request, the Court denies the alternative relief requested.

Court grants Plaintiffs' Relief Motion as to Mantooth and Lopez ,and severs the cost-shifting provisions of their arbitration contracts.

Because the Court grants the Relief Motion in the interest of justice, it does not address, nor express any opinion on, the merits of Plaintiffs' alternative excusable neglect and mistake of fact or law arguments.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    The Court DIRECTS the Clerk of Court to reopen the case for good cause shown;

2.    Defendants' Motion for Reconsideration is GRANTED IN PART (ECF No. 125) to clarify the scope of the Court's prior Order (ECF No. 124) with respect to the fee- and cost-shifting clauses as follows:

   a.    Any portion of any Agreement allowing fee- and cost-shifting is SEVERED, except that the arbitrator may award attorneys' fees and costs as authorized by federal law;

   b.    Any portion of any Agreement that Plaintiffs Bujok, Darr, Nagle, and Rafaele may have with the Defendants is SEVERED to the extent that it establishes an obligation to split the costs of arbitration equally between Plaintiffs and Defendants; and

   c.    The remainder of Defendants' Motion is DENIED;

3.    Plaintiffs' Motion for Relief (ECF No. 127) is GRANTED IN PART to clarify the severance of the fee- and cost-splitting clauses as follows:

   a.    Any portion of any Agreement that Plaintiffs Mantooth or Lopez may have

with Defendants is SEVERED to the extent that it establishes an obligation to split the costs of arbitration equally between Plaintiffs and Defendants; and

    b.    The remainder of Plaintiffs' Motion is DENIED;

4.    Defendants' Motion to Strike (ECF No. 142) is GRANTED IN PART, and the attachments to Plaintiffs' reply in support of their Relief Motion are stricken, and the remainder of Defendants' Motion is DENIED;

5.    The claims of the named Plaintiffs, as well as of opt-in plaintiffs Darr and Lopez, REMAIN STAYED pending the conclusion of their individual arbitration proceedings. The claims of opt-in plaintiffs Bonham, Cline, Hattlestad, and Howard remain pending before this Court; and

6.    Counsel are directed to contact the Chambers of U.S. Magistrate Judge Michael E. Hegarty to set a status conference in this matter on the claims of opt-in plaintiffs Bonham, Cline, Hattlestad, and Howard.

Dated this 28th day of January, 2019.

BY THE COURT:

William J. Martínez
United States District Judge